In the

# United States Court of Appeals

### For the Seventh Circuit

No. 21-1794

RIVERSTONE GROUP, INC.,

*Plaintiff/Counter Defendant-Appellee*,

*v.*

MIDWEST OPERATING ENGINEERS
FRINGE BENEFIT FUNDS,

*Defendant/Counter Plaintiff-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:19-cv-04039 — **Sara Darrow**, *Chief Judge*.

ARGUED DECEMBER 6, 2021 — DECIDED MAY 4, 2022

Before RIPPLE, WOOD, and KIRSCH, *Circuit Judges*.

RIPPLE, *Circuit Judge*. RiverStone Group, Inc. ("River-Stone") filed this action seeking a declaratory judgment, *see* 28 U.S.C. § 2201, that it had no obligation to make contributions to the employees' pension fund on behalf of individuals hired after the collective bargaining agreement had expired. The defendant, Midwest Operating Engineers Fringe Benefit Funds ("the Funds"), filed a counterclaim, seeking an

accounting and payment of the contributions that, in their view, RiverStone owed on behalf of these new employees. In due course, the parties filed cross-motions for summary judgment. The district court granted RiverStone's motion; it held that RiverStone did not have a contractual duty to contribute to the Funds on behalf of the new employees and that it lacked jurisdiction to evaluate noncontractual sources of liability, such as the National Labor Relations Act ("NLRA"). Therefore, the dispute fell within the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). The Funds timely appealed.[1]

Because we agree with the district court that this matter falls within the exclusive province of the NLRB, we affirm the decision of the district court.

# I

## BACKGROUND

### A.

RiverStone, a mining company, operates sand and stone quarries in three midwestern states. The International Union of Operating Engineers, Local 150 ("Local 150"), represented a bargaining unit of RiverStone employees. Under the collective bargaining agreement, RiverStone contributed to the Funds based upon hours worked by the members of the bargaining unit.

The collective bargaining agreement expired on May 1, 2016. No language in the agreement imposes on RiverStone an obligation to make contributions after the agreement's

---

[1] Our appellate jurisdiction is secure under 28 U.S.C. § 1291.

expiration. RiverStone and Local 150 tried unsuccessfully to negotiate a successor agreement but were unable to come to mutually acceptable terms. However, the parties did not reach an "impasse," as that term is employed in the federal labor law context.[2] After the agreement expired, RiverStone continued to contribute to the Funds on behalf of the members of the bargaining unit.

On March 20, 2018, Local 150 went on strike, claiming that RiverStone had committed unfair labor practices; the union also filed charges with the NLRB.[3] At that point, RiverStone stopped making contributions to the Funds on behalf of the striking employees.

---

[2] The Supreme Court described an "impasse" in these terms: "that point at which the parties have exhausted the prospects of concluding an agreement and further discussions would be fruitless." *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 543 n.5 (1988) (quoting *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 779 F.2d 497, 500 n.3 (9th Cir. 1985)).

[3] An administrative law judge for the NLRB found that RiverStone had violated the NLRA by changing its "punch-in policy" without bargaining with Local 150, by requiring strikers to sign a preferential hiring list in order to return to work, by removing picket signs from public property, by disciplining and discharging an employee for engaging in union activity, and by denying an employee's right to union representation during an investigatory interview. *See Troy Grove, a Div. of Riverstone Grp. Inc.*, Case No. 25-CA-234477, 2021 WL 86882 (N.L.R.B. Div. of Judges Jan. 11, 2021).

During the strike, RiverStone hired new employees.[4] These new employees did the same work as that performed previously by striking employees, but RiverStone did not make contributions to the Funds on their behalf. In the summer of 2018, some striking employees began to make unconditional offers to return to work; as they did, they were reinstated and contributions on their behalf resumed.

### B.[5]

#### 1.

On February 12, 2019, the Funds asserted in an audit letter that RiverStone owed the Funds $243,882.40 in benefit contributions on behalf of the new employees. After receiving the letter, RiverStone filed this action in the district court, seeking a declaratory judgment that it did not owe the payments sought by the Funds. RiverStone asserted that the district

---

[4] The parties dispute whether these new employees were "permanent replacements." *Compare* R.1 at 2, *with* R.20 at 2. Answering this question is outside the scope of this case. We will call the employees hired during the strike the "new employees" and the ones hired before the strike the "striking employees."

[5] This case involves three statutes and several acronyms and initialisms. For clarity, we will use the following nomenclature:

- Section 301 of the Taft-Hartley Act, also known as the Labor Management Relations Act, is referred to as LMRA § 301. LMRA § 301 is codified at 29 U.S.C. § 185(a).

- Section 8 of the National Labor Relations Act is NLRA § 8(a)(5), and the Act itself is referred to as the NLRA. This Section is codified at 29 U.S.C. § 158(a)(5).

- Section 515 of the Employee Retirement Income Security Act ("ERISA") is ERISA § 515, codified at 29 U.S.C. § 1145.

court had subject matter jurisdiction under LMRA § 301(a) because "the parties' dispute involves a purported obligation arising from the [collective bargaining agreement]."[6] It further asserted that there was no obligation "arising from the [collective bargaining agreement] that requires RiverStone to make contributions to the Fund on behalf of Permanent Replacements whose wages, hours, terms and conditions of employment do not arise from the [collective bargaining agreement]."[7]

The Funds filed a motion to dismiss, submitting that LMRA § 301 could not serve as a predicate for the district court's subject matter jurisdiction because the Funds are not a labor organization and because the complaint contained no allegation of a contract violation. They maintained that the district court's jurisdiction was preempted by the NLRA because RiverStone was, in essence, claiming that it had no obligation to negotiate with Local 150 about its refusal to contribute for new employees. Such a dispute, in the Funds' view, should have been brought before the NLRB, not the district court.

In deciding the motion to dismiss, the district court held that it had subject matter jurisdiction over the declaratory judgment action. It reasoned that LMRA § 301 permits a fund to sue an employer for breach of a collective bargaining agreement, and therefore the statute also permits an employer to bring a declaratory judgment action against a fund to

---

[6] R.1 at 2.

[7] *Id.* at 3.

determine its rights and obligations under such an agreement.[8] The district court further held that the NLRB did not have exclusive jurisdiction over the dispute. Because the controversy involves a breach of a collective bargaining agreement, wrote the court, LMRA § 301 gave the court at least concurrent jurisdiction.

---

[8] LMRA § 301 provides jurisdiction for fund trustees to sue an employer for contributions under a contract. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 76, 83–84 (1982). In turn, under the inverse well-pleaded complaint rule of declaratory judgments, *see NewPage Wisconsin Sys. Inc. v. United Steel, Paper & Forestry Workers Int'l Union*, 651 F.3d 775, 777–78 (7th Cir. 2011), an employer can invoke Section 301 in a declaratory judgment action to determine whether it violated a collective bargaining agreement, *see Michels Corp. v. Cent. States, Se., & Sw. Areas Pension Fund*, 800 F.3d 411, 415–16 (7th Cir. 2015).

Although a Section 301 suit can be brought only against the parties to the contract, *see Loss v. Blankenship*, 673 F.2d 942, 946 (7th Cir. 1982); *Baker v. Fleet Maint., Inc.*, 409 F.2d 551, 554 (7th Cir. 1969), we have long recognized that trust fund beneficiaries can sue under Section 301 as third-party beneficiaries to the agreement, *see, e.g., Lewis v. Quality Coal Corp.*, 243 F.2d 769, 772–73 (7th Cir. 1957); *Bugher v. Feightner*, 722 F.2d 1356, 1358 (7th Cir. 1983) ("[P]lan trustees are considered to be third party beneficiaries of the collective bargaining agreement between the union and the employer. In that capacity, the trustees can bring an action [under LMRA § 301] seeking damages for breach of contract … ."); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 602 (7th Cir. 2002); *Chi. Painters & Decorators Pension, Health & Welfare & Deferred Sav. Plan Tr. Funds v. Karr Bros.*, 755 F.2d 1285, 1287–88 (7th Cir. 1985); *Chi. Reg'l Council of Carpenters Pension Fund v. Schal Bovis, Inc.*, 826 F.3d 397, 399–400 (7th Cir. 2016); *McCleskey v. CWG Plastering, LLC*, 897 F.3d 899, 901 (7th Cir. 2018); *see also Kaiser Steel Corp.*, 455 U.S. at 83 n.8; *Loss*, 673 F.2d at 948. Because they can be sued by fund trustees for breach, employers can seek a declaratory judgment determining whether they are in breach.

**2.**

Relying on ERISA § 515 and LMRA § 301, the Funds then filed a counterclaim, asserting a right to an audit and to payment of contributions from RiverStone to the Funds on behalf of the new employees. In due course, RiverStone moved for summary judgment on its declaratory judgment request and on the Funds' ERISA-based counterclaim. RiverStone raised labor law defenses, not relevant to this appeal, and submitted that because the collective bargaining agreement had expired, it had no obligation to contribute on behalf of the new employees.

In replying to RiverStone's motion for summary judgment, the Funds characterized the dispute as a simple ERISA case and maintained that RiverStone owed contributions for bargaining unit employees based on the hours they had worked and the wages they were paid. It also contended that, absent an impasse, RiverStone was required by NLRA § 8(a)(5) to maintain the status quo by making the disputed contributions. In the Funds' view, RiverStone's failure to make these contributions on behalf of the new employees, regardless of whether they were permanent replacements, altered the status quo.

The district court entered summary judgment for RiverStone. It acknowledged its authority to construe a collective bargaining agreement and further acknowledged that a collective bargaining agreement could serve as the predicate for ERISA liability. But, here, it continued, the collective bargaining agreement had expired and therefore could not serve as such a predicate. The *sine qua non* for liability under ERISA § 515, the court emphasized, is the existence of a valid written instrument binding the employer to make the payments.

Although the district court had full authority to hear an ERISA case, it did not have jurisdiction to resolve claims of unpaid contributions when no contractual provision applied. Relying on *Laborers Health & Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 548–49 (1988), the district court concluded that "[a]fter a [collective bargaining agreement] or other relevant agreement expires, an employer's obligation under ERISA to pay contributions pursuant to that agreement ceases."[9] Without a contract, concluded the court, any failure to make payments "could only constitute a violation of NLRA § 8(a)(5),"[10] which is under the NLRB's exclusive jurisdiction.

The court therefore determined that there could be no duty under ERISA without a contractual provision and declared that "RiverStone has no duty to make contributions to the Funds on behalf of the new employees pursuant to the [collective bargaining agreement] or the Trust Agreements."[11] Finally, the district court noted that, in their counterclaim, the Funds had sought relief under NLRA § 8(a)(5), but it ruled that such claims were within the exclusive purview of the NLRB.

---

[9] R.53 at 6.

[10] *Id.* at 8.

[11] *Id.* at 13.

## II

## DISCUSSION

### A.

At this point in the litigation, the Funds maintain River-Stone's refusal to make payments to the Funds for the new employees violates the company's continuing obligation to maintain the status quo while the parties continue to negotiate a new agreement. *See NLRB v. Katz*, 369 U.S. 736, 743 (1962). Given its authority to construe labor contracts in accordance with national labor policy grounded in the LMRA, *see Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 456 (1957), the district court should have viewed this obligation to maintain the status quo as federal labor policy and enforced it as an obligation of RiverStone. Relying on *Lincoln Mills*, the Funds submit that it was well within the permissible "range of judicial inventiveness" of the LMRA to apply the status quo preservation rule[12] derived from the NLRB's jurisprudence of unfair labor practices in the context of Section 301.[13]

In the alternative, the Funds submit that the district court should have assumed jurisdiction under Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145, because the Funds have an independent right to enforce the terms of the collective bargaining agreement relating to the funding of benefits. *See Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv.*,

---

[12] The requirement to maintain the status quo stems from the statutory duty to bargain. *See NLRB v. Katz*, 369 U.S. 736, 743 (1962); *see also* 29 U.S.C. § 158(a)(5).

[13] Appellant's Br. 19.

870 F.2d 1148 (7th Cir. 1989) (en banc). The new employees were, emphasize the Funds, employees of RiverStone and performing bargaining unit work. Therefore, RiverStone was obligated to contribute to the Funds on their behalf.

RiverStone maintains that no contractual provision is implicated because the contract had expired. Without a contractual provision to serve as a predicate, continues RiverStone, the sole possible legal ground left for relief is the NLRA. Because the NLRB has exclusive jurisdiction over NLRA disputes, the district court correctly ruled that it was without jurisdiction.

**B.**

We begin our analysis by examining the statutory landscape. Central to the federal regulation of industrial relations affecting interstate commerce is the NLRA. This statute makes it unlawful for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). As part of this duty to bargain, an employer must "maintain the status quo after the expiration of a collective bargaining agreement until a new agreement is reached or until the parties bargain in good faith to impasse." *Gen. Serv. Emps. Union, Loc. 73 v. NLRB*, 230 F.3d 909, 913 (7th Cir. 2000) (quoting *NLRB v. Emsing's Supermarket*, 872 F.2d 1279, 1285 (7th Cir. 1989)); *Katz*, 369 U.S. at 743 ("We hold that an employer's unilateral change in conditions of employment under negotiation is similarly a violation of § 8(a)(5), for it is a circumvention of the duty to negotiate which frustrates the objectives of § 8(a)(5) much as does a flat refusal.").

"As a general rule, federal courts do not have jurisdiction over activity which 'is arguably subject to … § 8 of the

[NLRA],' and they 'must defer to the exclusive competence of the National Labor Relations Board.'" *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982) (alteration in original) (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959)). There is, however, an exception pertinent to our case. LMRA § 301 vests the district courts with concurrent authority to entertain "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Section 301 provides an "extremely limited" grant of jurisdiction only for "cases that allege violations of the collective bargaining agreement." *Teamsters Nat'l Auto. Transporters Indus. Negotiating Comm. v. Troha*, 328 F.3d 325, 329 (7th Cir. 2003); *Textron Lycoming Reciprocating Engine Div. v. United Auto. Workers, Int'l Union*, 523 U.S. 653, 661–62 (1998); *see also Miner v. Loc. 373*, 513 F.3d 854, 860 (8th Cir. 2008) ("The existence of a valid contract between an employer and a labor organization is a necessary prerequisite for federal jurisdiction under Section 301(a).").

ERISA supplies the final statutory landmark. Section 515 of this statute, 29 U.S.C. § 1145, imposes an affirmative obligation on employers to make contributions to multiemployer benefits plans in accordance with the terms of the plan or the governing collective bargaining agreement. Another section of the same statute, Section 502, 29 U.S.C. § 1132(g)(2), permits a "fiduciary for or on behalf of plan" to bring an action in the district court to compel such payments. If the employer is found to be delinquent in its payments, the court may award not only the unpaid contributions but also interest on those unpaid contributions and liquidated damages at least equal to the amount of that interest. Attorney's fees, costs and "such

other legal or equitable relief as the court deems appropriate" are also available. *Id.*

The Supreme Court has spoken on the interaction between ERISA and federal labor policy under the NLRA in *Advanced Lightweight Concrete*. The Supreme Court held that once a collective bargaining agreement had expired, ERISA did not confer jurisdiction on the district court to determine whether the employer's failure to make post-contract contributions violated the NLRA. *Advanced Lightweight Concrete*, 484 U.S. at 547–49. There, the fund, alleging a breach of the employer's duty to bargain in good faith under NLRA § 8(a)(5) and asserting jurisdiction under ERISA § 515, *id.* at 542–43, sued the employer to collect post-contract contributions. The fund contended that the court should give ERISA "§ 515 a broad construction that would include postcontract delinquencies" because to hold otherwise would leave a "gap" in the enforcement scheme. *Id.* at 550–51.

The Supreme Court ruled that the fund was not entitled to relief under ERISA. It held that the duty to maintain the status quo after the expiration of the collective bargaining agreement derives from NLRA § 8(a)(5)—not the collective bargaining agreement. "If the labor legislation were simply repealed, *in toto*, [the funds] would have no basis whatsoever for claiming that an employer had any duty to continue making contributions to [the funds] after the expiration of its contractual commitment to do so." *Id.* at 553. Therefore, the NLRB has the exclusive authority to determine whether the employer has violated that duty. *Id.* at 552. The Court reasoned that nothing in ERISA "confer[ed] jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes

a violation of the NLRA." *Id.* at 549. The Court then explained that there were strong policy reasons against reading the ERISA statute so broadly as to confer jurisdiction over an alleged violation of the NLRA:

> [W]hether an employer's unilateral decision to discontinue contributions to a pension plan constitutes a violation of the statutory duty to bargain in good faith is the kind of question that is routinely resolved by the administrative agency with expertise in labor law. There are situations in which district judges must occasionally resolve labor issues, but they surely represent the exception rather than the rule. In cases like this, which involve either an actual or an "arguable" violation of § 8 of the NLRA, federal courts typically defer to the judgment of the NLRB.

*Id.* at 552.[14]

## C.

Unable to bring an action based on the ERISA statute because of the Supreme Court's decision in *Advanced Lightweight Concrete*, the Funds attempt to avoid that barrier by premising their action for the payment of contributions on LMRA § 301. In essence, they maintain that federal courts can develop through LMRA § 301 a federal common law obligation to bestow the benefits of an expired collective bargaining agreement on workers hired after that expiration.

---

[14] We have decided in *Stone v. Signode Industrial Group LLC*, 943 F. 3d 381 (7th Cir. 2019) that the parties to a contract are free to provide that those benefits will survive the underlying agreement.

The district court correctly concluded that *Advanced Light-weight Concrete* precludes such an intrusion into the domain of the unfair labor practices provision of NLRA § 8(a)(5). In the absence of a contractual provision, whether the duty to preserve the status quo extends to contributions of newly hired workers is an issue for the NLRB. Consequently, the district court correctly held that it lacked "jurisdiction to resolve claims of unpaid contributions when no contractual provision[] applies."[15]

Moreover, this conclusion is consonant with the Supreme Court's description of the relationship between NLRA § 8 and LMRA § 301:

> When an activity is … arguably prohibited by § 8 of the NLRA, the preemption doctrine developed in [*Garmon*], and its progeny, teaches that ordinarily "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." When, however, the activity in question also constitutes a breach of a collective-bargaining agreement, the Board's authority "is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301."

*William E. Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 15–16 (1974) (cleaned up) (first quoting *Garmon*, 359 U.S. at 245; and then quoting *Smith v. Evening News Ass'n*, 371 U.S 195, 197 (1962)). The Funds do not argue that RiverStone

---

[15] R.53 at 7.

breached the collective bargaining agreement—instead they argue that "labor law" requires "employers [to] honor the terms of an expired agreement."[16] This is an NLRA § 8(a)(5) argument, not an LMRA § 301 argument. It should thus be brought to the NLRB.

The Funds nevertheless submit that "[u]nder *Lincoln Mills*, it was well within the Court's 'range of judicial inventiveness' to apply the NLRB's rule endorsed by the Supreme Court in *Katz* and *Advanced Lightweight* to enforce RiverStone's admitted obligation to maintain the [collective bargaining agreement's] terms and submit contributions to the Funds."[17] They remind us that the Supreme Court has indicated that federal courts can develop federal common law to effectuate the goals of LMRA § 301 and that this authority includes solving the "problems [that] lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy." *Lincoln Mills*, 353 U.S. at 457. Judges are allowed a "range of judicial inventiveness … determined by the nature of the problem." *Id.*

We cannot construe this latitude as permission to go beyond the focused task of construing a labor contract and to invade the exclusive province of the NLRB. *Cf. Textron*, 523 U.S. at 657 ("'Suits for violation of contracts' under § 301(a) are … suits that claim a contract has been violated."). "Judicial inventiveness" must be limited to those matters directly tied to the enforcement of labor contracts. For instance,

---

[16] Appellant's Br. 17.

[17] *Id.* at 19.

in *Troha*, we held LMRA § 301 permits a party to a collective bargaining agreement that is otherwise covered by § 301 to enforce an arbitration subpoena against a non-signatory of the agreement. 328 F.3d at 331. We concluded that federal question jurisdiction was proper, following two veins of reasoning: first, the federal cause of action was necessary to effectuate the collective bargaining agreement. *Id.* at 330 ("Enforcement of an agreement to arbitrate cannot provide the 'necessary legal remedy' if the parties to the arbitration have no means of securing valuable evidence other than their own testimony."). Second, a parallel statute, the Federal Arbitration Act, suggested a congressional desire to have an enforcement mechanism for arbitration subpoenas. *Id.* at 330–31.

Both rationales for finding a federal cause of action in *Troha* counsel against finding one here. First, a federal cause of action is not necessary to effectuate § 301; NLRA § 8(a)(5) already handles this exact situation. There is no gap in the statutory scheme that requires judicial inventiveness. The dispute falls squarely—but only—into NLRA § 8. Second, employing Section 301 here would not effectuate the congressional regulation of labor relations; Congress already has vested this task in the NLRB through NLRA § 8.

The Funds rely on two other cases in support of their position. Neither is controlling; neither requires extended discussion. *Midwest Operating Engineers Welfare Fund v. Cleveland Quarry*, 844 F.3d 627 (7th Cir. 2016), is of no help to the Funds. That case was solely concerned with "the contributions that RiverStone had failed to make in the interim between the decertification of the union and the expiration of the collective bargaining agreement," not post-collective bargaining

agreement contributions. *Id.* at 629. Unlike here, the contract was still intact.

*Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243 (1977), is also of no help. It is a case involving an agreement to arbitrate disputes arising out of the contract. When the contract was terminated, the employer refused to arbitrate a dispute over severance payment rights earned under the contract. *Id.* at 246–48. Relying on its precedent, the Supreme Court explained that "obligations under their arbitration clause survived contract termination when the dispute was over an obligation arguably created by the expired agreement." *Id.* at 252. Here, the dispute is over an obligation that does not arise under any contract.

The remainder of the Funds' arguments deal with alleged unfair labor practice matters properly within the domain of the NLRB.

## Conclusion

We affirm the judgment of the district court.

AFFIRMED