RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0174p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

OPERATING ENGINEERS' LOCAL 324 FRINGE BENEFIT
FUNDS; TRUSTEES OF THE OPERATING ENGINEERS'
LOCAL 324 FRINGE BENEFIT FUNDS,

           *Plaintiffs-Appellants*,

    *v.*

RIETH-RILEY CONSTRUCTION CO., INC.,

           *Defendant-Appellee*.

No. 21-1229

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:20-cv-10323—David M. Lawson, District Judge.

Argued: December 8, 2021

Decided and Filed: August 8, 2022

Before: CLAY, DONALD, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Daniel G. LeVan, FINKEL WHITEFIELD SELIK, Farmington Hills, Michigan, for Appellants. Philip Gutwein, II, FAEGRE DRINKER BIDDLE & REATH, Indianapolis, Indiana, for Appellee. **ON BRIEF:** Daniel G. LeVan, Nancy H. Pearce, FINKEL WHITEFIELD SELIK, Farmington Hills, Michigan, for Appellants. Philip Gutwein, II, Emily A. Kile-Maxwell, FAEGRE DRINKER BIDDLE & REATH, Indianapolis, Indiana, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge. When an employer refuses to pay into its employees' benefit funds, two federal statutes step in and offer relief. The first statute, ERISA, requires

employers to contribute to employee benefit funds in line with the terms of a contract. When an employer breaches those terms, ERISA offers the jilted fund a federal vehicle for its breach-of-contract claim. And that claim comes within the "exclusive jurisdiction" of a federal district court. The second statute, the NLRA, gives employers a statutory duty to continue their contributions even after a contract expires. When an employer breaches that duty, the NLRA provides an unfair-labor-practice claim. And that claim comes within the exclusive purview of an administrative body, the NLRB.

Here, a group of employee benefit funds sued Rieth-Riley Construction Company for late contributions under ERISA. They brought their contract claim in a federal district court. Rieth-Riley responded with a factual attack on the district court's subject-matter jurisdiction. It argued that the presence of a live contract is a jurisdictional prerequisite to the Funds' ERISA suit and that no contract existed. This meant that the Funds' claim belonged in the NLRB.

The district court sided with Rieth-Riley. Finding no contract bound the parties, it dismissed the suit on jurisdiction grounds. But the presence of a live contract goes to the merits of the Funds' ERISA action, not the district court's jurisdiction to hear it. So we reverse.

I.

A.

When an employer stops contributing to its employees' benefit funds, where and how should the funds seek a remedy? As in many areas of law, the answer is: It depends.

The Employee Retirement Income Security Act of 1974 (ERISA) offers one avenue for relief. 29 U.S.C. § 1001 et seq. ERISA governs employee benefit funds, regulates their maintenance, and protects workers' interests in them. *See* 29 U.S.C. § 1001(a). When an employer fails to make a "promised contribution" to one of those funds, it often breaches a contract. *See Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 549 (1988). And when such a breach occurs, ERISA offers a federal vehicle for the contract claim. Section 515 of that statute tells employers to "make [] contributions in accordance with the terms and conditions of [the] plan or [] agreement."

29 U.S.C. § 1145. Another provision, § 502(g), gives funds a cause of action to enforce § 515's duties against "employers who are delinquent in meeting their contractual obligations." *Advanced Lightweight*, 484 U.S. at 547. And a final provision, § 502(e), vests "district courts of the United States" with "exclusive jurisdiction" to hear a fund's ERISA claim. 29 U.S.C. § 1132(e)(1); *see also id.* § 1001(b) (explaining that unions and employers come within ERISA's jurisdictional scope).

Contracts, though, take many forms. A collective bargaining agreement offers one example, and it adds another federal statute into the mix. That statute, the National Labor Relations Act (NLRA), tells employers and unions they must bargain "in good faith with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d). Of course, bargaining becomes difficult "if, during negotiations, an employer is free to alter the very terms and conditions that are the subject of those negotiations." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991). So the NLRA gives unions and employers another duty: They must "freez[e] the status quo" and "honor the terms and conditions of an *expired* collective bargaining agreement" as they negotiate a new one. *Advanced Lightweight*, 484 U.S. at 539 n.6 (emphasis added) (internal quotation marks omitted). That status quo includes bargained-for contributions to employee benefit funds. Put another way, even when an employer has no *contractual duty* to contribute to a fund, the NLRA imposes a *statutory duty* during a status quo period.

This statutory duty comes with its own enforcement mechanism. When an employer "effects a unilateral change" to the status quo—say, by halting its contribution payments—it commits an "unfair labor practice" under § 8 of the NLRA. *Litton,* 501 U.S. at 198 (citing *NLRB v. Katz*, 369 U.S. 736 (1962)); 29 U.S.C. § 158(a)(5). And "activity arguably subject to . . . § 8" of the NLRA, comes within the "primary," and often "exclusive," jurisdiction of the National Labor Relations Board (NLRB). *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245–46 (1959); *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 199–200 & n.29 (1978).

Return to our original question. When an employer stops contributing to an employee benefit fund, the where and how of any remedial lawsuit will depend on the source of the

employer's contribution duty.  If the duty stems from a live contract, ERISA gives funds a claim for delinquent contributions in federal district court.  But if the duty comes from the employer's statutory obligation to maintain the status quo, the NLRA provides an unfair-labor-practices claim in the NLRB.

With the stage set, we turn to this case.

B.

Rieth-Riley, a construction contractor, builds and repairs highways in Michigan. Operating Engineers' Local 324, a union, represents a bargaining unit of Rieth-Riley's employees. In 2013, Rieth-Riley's trade association entered a multiemployer, collective bargaining agreement (CBA) with Local 324.  That agreement required Rieth-Riley to contribute to seven employee benefit funds each month.  These seven funds were jointly administered by Operating Engineers' Local 324 Fringe Benefit Funds.

For the next five years, all was smooth sailing.  Rieth-Riley used its employees' hours and income to calculate its monthly contributions to the Funds.  And the Funds, in turn, provided benefits—like health-care plans, pensions, and training—to Rieth-Riley's employees.  But as the CBA's expiration deadline drew near, the relationship between Local 324, Rieth-Riley, and the Funds soured.  Rieth-Riley's trade association decided to terminate the CBA rather than renew the agreement.  It hoped the termination would spark the negotiation of a new CBA.

Local 324 had other ideas.  It affirmed the CBA's termination as to "each and every" trade association member, including Rieth-Riley.  Then it refused to negotiate with the trade association or any of its members.  As the negotiations with Local 324 stalled, Rieth-Riley tried to chart a different course with the Funds.  Its employees continued to work and accrue benefits, so Rieth-Riley wanted to continue its contributions.  But the Funds followed Local 324's lead, rejecting each contribution payment Rieth-Riley tendered.

Rieth-Riley didn't give up.  For months, the company "fought hard to force the Funds to accept its post-expiration contributions—and the Funds fought just as hard to refuse them." (R. 62, Op. & Order, PageID 2383.)  The stalemate didn't break until Rieth-Riley found one of

its old agreements with Local 324. That agreement showed Rieth-Riley and the union had a § 9(a) relationship under the NLRA. *See* 29 U.S.C. § 159(a). That relationship required the parties to bargain in good faith for a new CBA and maintain the status quo in the meantime. *See DiPonio Constr. Co., Inc., v. Int'l Union of Bricklayers & Allied Craftsworkers, Local 9*, 687 F.3d 744, 749 (6th Cir. 2012). In practice, this meant that Rieth-Riley had a statutory obligation to make—and the Funds had an obligation to take—all post-expiration contributions.

After Rieth-Riley's § 9(a) discovery, the Funds accepted all payments without complaint. But just a year later, their relationship soured again. The Funds accused Rieth-Riley of missing some payments. And they tried to impose an audit on the company to prove it. When Rieth-Riley refused to cooperate with the investigation, the Funds sued under § 515 of ERISA and § 301 of the Labor Management Relations Act (LMRA). It asked the district court to compel an audit and force Rieth-Riley to pay any delinquent contributions.

Rieth-Riley responded with a factual attack on the district court's subject-matter jurisdiction. It argued that the source of its contribution duty—contract or statute—acted as a "jurisdictional predicate for the Funds' claims." (Rieth-Riley Br. at 21.) In its view, no live contract bound the parties. This meant that the NLRB had exclusive jurisdiction to hear the Funds' grievances.

The Funds argued the other way. Their claim, they asserted, had its roots in contract, not statute. According to the Funds, the parties implicitly had agreed to revive the expired CBA. But even if they hadn't, the Funds argued that independent agreements continued to bind the parties. Besides, they contended, whether a live contract existed went to the merits of the action, not the district court's subject-matter jurisdiction.

The district court sided with Rieth-Riley on both the jurisdiction and the contract question. The source of the obligation, it determined, acted as "an essential jurisdictional fact" that it had to "determine before proceeding forward." (R. 62, Op. & Order, PageID 2388.) And here, Rieth-Riley and the Funds "never entered into another contract" after the CBA expired. Nor did any independent agreements bind the parties. Without a contract, the court found Rieth-Riley's contribution duty "[arose] solely" from its "statutory status quo obligation under federal

labor law." (*Id.* at PageID 2385.)  And without a contract, the court held it lacked jurisdiction to hear the Funds' claim.  So it directed the Funds to the NLRB and dismissed their suit without prejudice.

The Funds appealed.  We review the district court's decision de novo.  *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 604 (6th Cir. 2007).

## II.

### A.

This appeal turns on a straightforward question:  Is "the presence of a live contract" an "essential jurisdictional fact" in a § 515 ERISA action?  Rieth-Riley answers yes.  It contends the Funds want to bring an unfair-labor-practices claim cloaked in contract clothing.  This, it posits, vests exclusive jurisdiction in the NLRB and ousts a federal court of jurisdiction to hear the Funds' suit.  The Funds answer no.  They argue that the presence of a live contract goes to the merits of their ERISA claim, not the district court's jurisdiction to hear it.[1]

*Advanced Lightweight* goes a long way to resolving the dispute.  In that case, a CBA compelled Advanced Lightweight to pay into several employee benefit plans.  *See Advanced Lightweight*, 484 U.S. at 542.  When the CBA lapsed, Advanced Lightweight stopped its contributions.  *Id.*  Then the plans' trustees sued.  *Id.*  They alleged that the employer's unilateral decision to stop payments qualified as an unfair labor practice under § 8 of the NLRA.  *Id.* at 542–43.  But here's the catch.  The trustees didn't bring their claims in the NLRB.  *Id.*  Instead, they brought their NLRA claim in a federal district court, arguing that § 515 and § 502 of ERISA gave the federal district court jurisdiction to hear their unfair-labor-practice allegations.  *Id.*

---

[1]As noted above, the Funds' complaint alleged claims under both § 515 of ERISA and § 301 of the LMRA. The district court dismissed both claims for want of subject-matter jurisdiction.  In their opening brief to this court, the Funds provide a few conclusory lines about their § 301 LMRA claim.  "To the extent there were any doubts as to the source of jurisdiction over the Funds' claims to enforce an audit or collect contributions," they offer, "jurisdiction also would be proper under [LMRA] Section 301." (Funds Br. at 47.)   Aside from this statement, the Funds make no real attempt to develop their LMRA argument.  This means they forfeit it.  *See Hensley v. Gassman*, 693 F.3d 681, 687 n.6 (6th Cir. 2012) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited].") (quoting *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)).

The Supreme Court rebuffed the trustees' workaround. ERISA's remedy, it determined, "[was] limited to the collection of 'promised [contractual] contributions.'" *Id.* at 549. Section 515's text, which "plainly describe[d] the employer's contractual obligation" omitted "any reference to a noncontractual obligation imposed by the NLRA." *Id.* at 546. So no matter which way one turned it, ERISA did not "confer jurisdiction on district courts to determine whether an employer's" conduct "constitute[d] a violation of the NLRA." *Id.* at 549.

We read *Advanced Lightweight* to stand for a simple proposition: ERISA grants federal district courts jurisdiction to hear breach-of-contract claims, not unfair-labor-practice claims. The scope of this proposition is limited. It signifies only that a plaintiff cannot use ERISA to get around the well-accepted rule that an NLRA claim belongs in the NLRB. And in practice, it plays out as follows. If a plaintiff brings an ERISA claim for "promised [contractual] contributions," a federal district court has jurisdiction to hear the suit. *Id.* Put another way, as long as a plaintiff's claim rests on good-faith assertions that independent, live agreements bind the employer, *Advanced Lightweight* does not enter the picture.

Our reading of *Advanced Lightweight* puts us in good company, both in this circuit and others. We start with the cases close to home. In *Behnke*, an employer argued that the district court "lacked jurisdiction" to enforce "contribution obligations" after a CBA expired. *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke*, 883 F.2d 454, 464 (6th Cir. 1989). We rejected its argument. True, we acknowledged, federal courts lacked jurisdiction "to determine whether an employer's unilateral decision to refuse to make post-contract contributions violate[d] the [NLRA]." *Id.* But that didn't affect our jurisdiction under ERISA to decide whether "independent, unexpired" agreements continued to bind the parties. *Id.*

The same held true in *General Materials* and *Northwestern Construction*. In both cases, the CBA expired. *See Cent. States, Se. & Sw. Areas Pension Fund v. Gen. Materials, Inc.*, 535 F.3d 506, 508 (6th Cir. 2008); *Mich. Bricklayers v. Nw. Constr., Inc.*, No. 95-2379, 1997 WL 351296, at *1 (6th Cir. June 23, 1997). Still, we considered the merits of the plaintiff's § 515 ERISA claim without imposing a "jurisdictional prerequisite." *Gen. Materials*, 535 F.3d at 509–10; *Nw. Constr.*, 1997 WL 351296, at *2–3. In short, no Sixth Circuit case has treated the presence of a contract as "an essential jurisdictional fact" a district court must ferret out

before it asserts jurisdiction over an ERISA claim.  Rather, our cases treat the presence of a live contract as a merits issue, even in suits filed after a CBA expires.

Other circuits follow suit.  In *Brown v. C. Volante Corp.*, the Second Circuit held *Advanced Lightweight* meant only that "the NLRB generally has exclusive jurisdiction over unfair labor practice claims."  194 F.3d 351, 354 (2d Cir. 1999).  That a fund brought ERISA claims "after the signed CBA expired" didn't "render them *per se* unfair labor practice claims over which the district court lacks jurisdiction."  *Id.*  Instead, the court retained jurisdiction under ERISA to decide whether the alleged contracts bound the employer.  *Id.*  The Second Circuit's conclusion tracks with ours.  As long as a plaintiff asserts an ERISA cause of action—and doesn't ask a federal district court to find an employer violated the NRLA—the court has jurisdiction to hear the case.  *Accord Auto. Mech. Loc. 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 745 (7th Cir. 2007) (holding that *Advanced Lightweight* did not foreclose a post-expiration ERISA claim for delinquent contributions); *Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc.*, 104 F.3d 1050, 1058 (8th Cir. 1997) (same).

Here, the Funds brought an ERISA claim, not an unfair-labor-practices claim.  They argued that Rieth-Riley failed to make its "promised [contractual] contributions," not that it violated the NLRA by refusing to bargain or maintain the status quo.  *Advanced Lightweight*, 484 U.S. at 549.  Because the Funds ask us to find that Rieth-Riley breached a contract, not that it violated the NLRA, their claim does not fall into *Advanced Lightweight*'s ambit.

Of course, in the end, the Funds' contract claims may fall flat for the reasons the district court gave.  But those findings go to the merits of the Funds' ERISA claim, not our jurisdiction to hear it.  To the extent that the district court concluded otherwise, it erred.

B.

Rieth-Riley pushes back on several fronts.  First, it urges us to adopt a broader reading of *Advanced Lightweight*.  That case, it asserts, holds "that the existence of a *contractual* relationship is a jurisdictional predicate" for a § 515 ERISA claim.  (Rieth-Riley Br. at 21.)  In its view, no contract exists.  So the "law converts the Funds' complaint into an unfair labor

practice claim, *divests* federal courts of jurisdiction, and relegates the Funds to the NLRB." (*Id.* at 28.)

Two points in response. To start, the Supreme Court made no such holding in *Advanced Lightweight*. And why would it? In that case, the parties agreed no contract existed. And the plan trustees acknowledged—indeed, openly asserted—that they alleged a violation of the NLRA and the NLRA alone. In short, the source of the employer's contribution obligation wasn't at issue in *Advanced Lightweight*. So the Court had no occasion to reach the issue, much less hold that "the source of an employer's contribution obligation" serves as "a factual predicate for [ERISA] jurisdiction." (Rieth-Riley Br. at 22.)

Where the Supreme Court declined to tread, so do we. If we read *Advanced Lightweight* to turn a contract into a "jurisdictional prerequisite" for a § 515 ERISA claim, we stretch the case too far. What's more, if we graft an "essential jurisdictional fact" gloss onto § 515, we run a different risk: ignoring the Supreme Court's instruction to delineate between an element of a cause of action and jurisdiction over that cause of action. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006). In a string of similar labor-law cases, this court has refused to take that path. *See, e.g.*, *Daft v. Advest, Inc.*, 658 F.3d 583, 590–93 (6th Cir. 2011) (holding that the "existence of an ERISA plan [was] not a jurisdictional prerequisite," but "an element of a plaintiff's claim"); *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 486 (6th Cir. 2009) (concluding that existence of a CBA breach went to the merits, not the jurisdiction of a plaintiff's § 301 LMRA claim); *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005–06 (6th Cir. 2009) (same for the presence of a live CBA). We see no reason to read between *Advanced Lightweight*'s lines and chart a different course now.

Next, assume Rieth-Riley is right about the contracts; they don't exist. Even so, a deficient contract claim by itself doesn't "convert[] the Funds' complaint into an unfair labor practice claim" and "divest[]" this court of jurisdiction. (Rieth-Riley Br. at 28.) Rather, it would mean what a deficient claim always does in this context: The Funds lose on the merits.

As a last resort, Rieth-Riley falls back on a recent Seventh Circuit case: *RiverStone Group, Inc. v. Midwest Operating Eng'rs Fringe Benefits Funds*, 33 F.4th 424 (7th Cir. 2022). It

argues that this case supports its broad reading of *Advanced Lightweight*.  (*See* Rieth-Riley 28(j) Letter.)  We disagree.

To begin, *RiverStone* dealt with a different kind of claim.  There, a group of employee benefit funds sued RiverStone for late contributions under § 515 of ERISA.  But they didn't argue that RiverStone breached a CBA or another "valid written instrument."  *RiverStone*, 33 F.4th at 428.  Instead, they asserted that "labor law" required RiverStone to "honor the terms of an expired agreement."  *Id.* at 432.  The Seventh Circuit affirmed the district court's grant of summary judgment to RiverStone, holding that "in the absence of a contractual provision," whether an employer has a "duty to preserve the status quo . . . is an issue for the NLRB."  *Id.* at 431.  Here, the Funds bring a contract claim, not a "labor law" claim.  So their suit differs from those brought in *Advanced Lightweight* or *RiverStone*.  In those cases, the plaintiffs tried to use an ERISA cause of action to air their unfair-labor-practice claims in federal court.  Here, the Funds do no such thing; they allege contract claims only.

That difference aside, we agree with *RiverStone*'s bottom-line conclusion. "In the absence of a contractual" duty, an employer's "duty to preserve the status quo . . . is an issue for the NLRB."  *Id.*  That conclusion, though, has little to do with a federal district court's jurisdiction to hear a breach-of-contract claim under § 515 of ERISA.  Nor does it turn the merits of that contract claim into a "jurisdictional prerequisite" like Rieth-Riley claims.

### III.

For these reasons, we reverse the district court's dismissal of the Funds' claim for lack of subject-matter jurisdiction and remand for proceedings consistent with this opinion.