NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0620n.06

No. 12-4193

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 13, 2014
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| THE LAMSON & SESSIONS CO., | ) |
| | ) |
| *Plaintiff-Appellant*, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE NORTHERN |
| | ) DISTRICT OF OHIO |
| WILLIAM H. PETERS, *et al.*, | ) |
| | ) |
| *Defendants-Appellees*. | ) |
| | ) |

Before: BATCHELDER, Chief Judge; GRIFFIN, Circuit Judge; BELL, District Judge.[*]

**ALICE M. BATCHELDER, Chief Judge.** The Lamson & Sessions Co. appeals the grant of summary judgment to the defendants on certain of its claims in this case arising out of a Chapter 7 Bankruptcy adversary proceeding. For the reasons that follow, we AFFIRM.

**I.**

In 1976, the Lamson & Sessions Co. purchased Youngstown Steel Door, a manufacturer of steel rail-car doors, and operated it as a wholly-owned subsidiary. Being a traditional heavy industry, Youngstown Steel Door had accumulated long-term obligations stemming from retiree pensions and healthcare, union issues, asbestos, and other environmental contamination.

In early 1988, Youngstown Steel Door began negotiations to sell its business to a new company, Youngstown Steel Door Industries, Inc. (YSD), formed by its former executives, including the named defendants herein, William Mundinger and William Peters. The other

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1

remaining defendant, Phil Dennison, was an accountant and a partner at Packer Thomas & Co. accounting firm, who directed the annual audits of YSD's financial statements.

While the parties were negotiating, several Youngstown Steel Door retirees brought a class action to enjoin the sale, naming as defendants Lamson, Youngstown Steel Door, YSD, and Youngstown Steel Door's retiree benefit plan. These lawsuits were proceeding in state court.

On March 9, 1988, Youngstown Steel Door and YSD finalized the sale in a "Purchase Agreement," in which YSD acquired the business and assets, as well as certain liabilities stemming from health care and pension claims. But the Purchase Agreement specifically excluded liability from the pending class-action lawsuits. Lamson was not a party to the Purchase Agreement.

On August 31, 1988, the class-action defendants (specifically, Lamson, Youngstown Steel Door, and YSD) settled the class-action lawsuits by signing two Settlement Agreements with the classes of retiree plaintiffs. In the Settlement Agreements, YSD agreed to continue paying retirement and healthcare benefits for 15 to 22 years, Youngstown Steel Door guaranteed YSD's agreement, and Lamson guaranteed Youngstown Steel Door's obligation. YSD operated the business and paid these benefits for almost 15 years, at a cost of approximately $40,000 per month.

In November 2001, YSD obtained an unexpected windfall of almost $4 million when its long-time health insurance carrier demutualized. Acting on the advice of corporate counsel, outside counsel, and its outside accountant (Phil Dennison of Packer Thomas, who determined that YSD had sufficient retained earnings to make the shareholder distribution), YSD distributed most of this money to its remaining shareholders; i.e., to Mundinger and Peters. In late 2002, YSD also spun-off its wholly-owned subsidiary, Triax-YSD Inc., to those shareholders at a total value of $1,241,347, according to the district court.

In early 2003, YSD contacted a bankruptcy and restructuring attorney to discuss the possibility of YSD's filing bankruptcy because YSD had been losing money for several months and was running out of credit availability. YSD did not file for bankruptcy at that time; rather, it decided to cut its expenses by defaulting on the $40,000 per month retiree payments, which would cause responsibility for those payments to revert to Youngstown Steel Door, and then Lamson, pursuant to the Settlement Agreements from the class actions.

On April 3, 2003, YSD notified the retirees that it would no longer pay the benefits, thus declaring itself in "default" under the Settlement Agreement. In response, Lamson loaned money to YSD, evidenced by certain promissory notes and secured with a mortgage, so that YSD could continue to pay the benefits. Using this money, YSD paid benefits for another year.

In April 2004, YSD's main creditor foreclosed on YSD, requiring the sale of its assets to a third party and rendering YSD defunct. From the proceeds of the sale, YSD repaid Lamson's loans and Lamson released its liens. Lamson assumed the YSD retiree benefit payments.

On July 9, 2004, Lamson sued YSD, Mundinger, and Peters in state court, claiming breach of contract, fraudulent transfer, breach of fiduciary duty, and unjust enrichment. Almost a year later, YSD filed for Chapter 7 bankruptcy, removing Lamson's lawsuit to the bankruptcy court. The bankruptcy court stayed the claims against YSD and appointed a bankruptcy trustee.

The bankruptcy court substituted the trustee as the plaintiff for the claims of fraudulent conveyance and breach of fiduciary duty, because those claims were common to all unsecured creditors. Lamson remained the plaintiff for its claims against Mundinger and Peters personally for alter ego breach of contract and unjust enrichment. Lamson filed amended complaints, naming Dennison and Packer Thomas on claims of tortious interference with contract, and adding YSD's in-house counsel as a defendant. The district court, acting on a joint motion, withdrew the bankruptcy reference and transferred the proceeding to the district court.

3

The defendants moved for summary judgment on several of the claims and, in separate orders, the district court granted summary judgments. Only four are before us on appeal:

1. Lamson's claim of alter ego breach of contract, for breach of the Purchase Agreement[1], against Mundinger and Peters. The district court granted summary judgment, holding that Lamson (1) was not a party to the Purchase Agreement; (2) could not show a breach of the Purchase Agreement; and (3) had not claimed a breach of the Settlement Agreement. [R. 101]

2. Lamson's claim of tortious interference with contract against Mundinger and Peters. The district court granted summary judgment, holding that the claim must fail because Lamson could not show a breach of contract, which is a prerequisite element to this cause of action. [R. 101]

3. Lamson's claim of tortious interference with contract against accountants Dennison and Packer Thomas. The district court granted summary judgment, holding that (1) Lamson could not show that the accountant's advice proximately caused the YSD directors to breach the contract — rather, Lamson itself had argued that the YSD directors acted regardless of any advice; (2) the statute of limitations had expired; and (3) under Ohio law, recovery was barred by the economic-loss rule. [R. 100]

4. Lamson's claim of unjust enrichment, based on the loans in 2003, against Mundinger and Peters. The district court granted summary judgment, holding that this claim must fail as a matter of Ohio law due to the existence of an express contract, that being the promissory notes secured by a mortgage, and full repayment of those loans. [R. 101]

On August 14, 2012, the district court announced that the parties had settled and dismissed all outstanding claims, which rendered the forgoing grants of summary judgment final and appealable. On September 13, 2012, Lamson appealed the judgments on these four claims.

**II.**

The district court decided all of these issues on summary judgment, so our review is *de novo*. *See Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013).

---

[1]The district court stated: "Lamson does not contend a breach of the Settlement Agreement, rather it limits its breach of contract action solely to the assumption and indemnification clauses in the Purchase Agreement as the obligations breached by YSD." Lamson did not move the district court to reconsider, nor did it ever attempt to alert the court that it had misunderstood Lamson's argument or overlooked any portion of Lamson's argument.

4

### A. Breach of Contract and Tortious Interference with Contract

Lamson argues that YSD breached its contract when it discontinued payment on the class-action retiree benefits and that the individual defendants (Mundinger, Peters, Dennsion) tortiously induced the breach of that contract (i.e., interfered with the contract). There are two contracts subject to consideration: the Purchase Agreement and the Settlement Agreements.

Because the Purchase Agreement specifically excludes the liabilities stemming from the retiree class actions, the Purchase Agreement does not compel YSD to make these payments. The absence of a binding contract on this issue means there could be no breach of contract. *See Donner v. Snapp*, 649 N.E.2d 42, 44 (Ohio App. 1994) (stating the elements for breach of contract).

While the Settlement Agreements do compel YSD to pay the class action benefits, the Settlement Agreements also anticipate the possibility of YSD's default and, therefore, include provisions for Youngstown Steel Door's and Lamson's guarantees. More importantly, the Settlement Agreements contain no requirement that YSD reimburse or indemnify Youngstown Steel Door or Lamson for payments made pursuant to those guarantees. Absent such a requirement, YSD could not have breached the Settlement Agreements for failing to reimburse or indemnify Lamson.

Finally, tortious interference with a contract requires the plaintiff to prove, as an element, an actual breach of contract. *See Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999). Because Lamson can prove no breach of contract as to either Agreement, it cannot satisfy this element and cannot prove tortious interference with contract.

### B. Breach of Quasi-Contract and Tortious Interference with Quasi-Contract

On appeal, Lamson also argues quasi-contract, or implied-by-law contract, because "the law implies an obligation of a principal debtor to reimburse his guarantor for any amount that the

guarantor is required to pay on the guaranteed indebtedness." *Mutual Finance Co. v. Politzer*, 256 N.E.2d 606, 610 (Ohio 1970). But a quasi-contract is not the same as an actual contract:

> In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relation springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual. In truth contracts implied in law are often called quasi contracts or constructive contracts.

*Hummel v. Hummel*, 14 N.E.2d 923, 925-26 (Ohio 1938) (citing *Columbus, Hocking Valley & Toledo R.R. v. Gaffney*, 61 N.E. 152, 153 (Ohio 1901)); *see also Gross v. Fizet*, No. 98-ca-68, 1999 WL 225417, *7 (Ohio App. March 31, 1999).

The district court did not consider or rule on Lamson's quasi-contract claim, and perhaps for good reason. Lamson did not assert this quasi-contract theory in any of its four amended complaints. Lamson did not argue quasi-contract in its motion for summary judgment; nor did it raise this quasi-contract claim in its written opposition to the defendants' motion for summary judgment. Lamson did not seek leave to submit a sur-reply or any additional briefing on this argument, either before or after it raised it verbally at oral argument before the district court.

Given that in this circuit we routinely deem arguments waived when raised only verbally and not in the written briefs, *see Humphrey v. U.S. Att'y Gen. Office*, 279 F. App'x 328, 331 (6th Cir. 2008), it would ill behoove us to hold a district court in error for ignoring such an argument, and would contravene established case law. *See Maher v. Int'l Paper Co.*, 600 F. Supp. 2d 940, 948 (W.D. Mich. 2009) (holding that "this court will not consider an argument that is raised for the first time at oral argument"); *Keys v. Dart Cont. Corp.*, No. 1:08-cv-00138, 2012 WL 2681461, *7 (W.D. Ky. July 6, 2012) (holding that "the [c]ourt will not consider Plaintiff's argument regarding her retaliation claim raised for the first time at oral argument"). We find that Lamson waived this argument for failure to raise it properly in the district court.

But even if Lamson could recover on its quasi-contract theory, it has no claim for tortious interference with a quasi-contract. A quasi-contract is not a contract, it is a legal fiction — it is not possible to interfere with a quasi-contract. And, in this case, the defendants could not even have attempted this impossibility because they did not know there was such a thing as this quasi-contract. It appears that even Lamson's lawyers did not know until late in the proceedings.

### C. Unjust Enrichment.

Finally, Lamson argues for recovery on a theory of unjust enrichment, claiming that it conferred benefits in the form of loans to YSD (secured with promissory notes and a mortgage) that unjustly enriched Mundinger and Peters as YSD's shareholder/directors. Lamson concedes that YSD repaid these loans in full, so it suffered no direct damages, but argues that because Mundinger and Peters used this money for further profit, they were unjustly enriched.

If that were the law, then virtually any lender could claim unjust enrichment against any borrower who uses the loan to his advantage (profit). But that is not the law. Unjust enrichment requires that the defendant retained the benefit "under circumstances where it would be unjust to do so without payment." *See Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984); *see also Ullmann v. May*, 72 N.E.2d 63, 67 (Ohio 1947) ("A person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed between them the other should give in return."). There is no unjust enrichment here.

### III.

For the foregoing reasons, we **AFFIRM** the judgments of the district court.

7

GRIFFIN, Circuit Judge, concurring in part and dissenting in part.

In my view, the district court erred in entering summary judgment against Lamson's contract claim. I would reverse that aspect of the district court's judgment and remand for further proceedings on that claim. I join the majority in their resolution of the other issues.

There is no real dispute that Youngstown Steel Door Industries, Inc. (YSD) was required to reimburse Lamson by virtue of the guarantor relationship set forth in the settlement agreement. In Ohio, "the law implies an obligation of a principal debtor to reimburse his guarantor for any amount that the guarantor is required to pay on the guaranteed indebtedness." *Mut. Fin. Co. v. Politzer*, 256 N.E.2d 606, 610 (Ohio 1970); *see Frank Lerner & Assoc., Inc. v. Vassy*, 599 N.E.2d 734, 740 (Ohio Ct. App. 1991) (describing the reimbursement obligation as arising from an "implied contract of indemnity"); *Nat'l Sur. Corp. v. Seward*, 165 N.E. 588, 590 (Ohio Ct. App. 1928) (describing the guarantor as "a simple contract creditor of the principal [who] is entitled to maintain the common-law action for money paid"). *See also Poe v. Dixon*, 54 N.E. 86, 88 (Ohio 1899) (treating such an action as "[a]n action upon a contract not in writing"). And the defendants are surely incorrect in contending that insufficient consideration supported the guarantee in the first place. *See Coldwell Banker Residential Real Estate Servs., Inc. v. Bishop*, 498 N.E.2d 1382, 1385 (Ohio Ct. App. 1985) ("In general, if the consideration given is sufficient to support a contract it does not matter from or to whom it moves. The consideration may be given to the promisor or a third person or may be given by the promisee or a third person.").

Despite YSD's patent legal obligation to reimburse Lamson for the recurring $40,000 monthly payments that Lamson made on YSD's behalf under the guarantee, the evidence suggests that defendants purposefully decided to default on YSD's obligations to its retirees in the hope that Lamson would have no recourse against them. Mundinger, for example, advised

8

YSD's lawyers and accountants that YSD "has been losing money for several months" due in part to its payment of the retiree obligations and suggested one way out of YSD's financial crisis: "[I]f we default on these payments the responsibility goes back to [Lamson]. I see no other obligation than to advise the appropriate parties that we will be in default." Even as defendants made the decision to abandon the retirees and leave Lamson with the obligation, they appropriated more than $3.5 million from YSD as cash distributions to themselves and spun off to themselves a YSD subsidiary that later sold for $1.25 million.

Given YSD's reimbursement obligations, entering summary judgment against Lamson is not appropriate on these facts. As a result, the primary obstacle separating Lamson from recovery is defendants' assertion that Lamson waived its potentially meritorious claim by failing to assert it in the district court. In my view, Lamson's claim was sufficiently preserved in the district court. Lamson pled breach of contract and unjust enrichment claims against defendants in both state court and federal court, specifically alleging breaches of both the purchase agreement and the settlement agreement. Ohio state courts have construed similar allegations as sufficient notice pleading to state a cause of action for breach of an implied contract. *See Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (1984) (Ohio 1984) (noting that the "actual nature" of the plaintiff's unjust enrichment allegations was an implied-contract claim rather than a tort claim).

After defendants moved for summary judgment, the parties' arguments evolved over time from a focus on the purchase agreement to a focus on the settlement agreement. By the time the district court held a hearing on the summary judgment motion, Lamson explicitly argued that it possessed an implied right to indemnity from YSD by virtue of the settlement agreement and that defendants' failure to reimburse Lamson breached their duty to indemnify. In the end, the district court reached a conflicted ruling, deciding on the one hand that Lamson "limits its breach

9

of contract action solely to the . . . Purchase Agreement" rather than the settlement agreement, but finding on the other hand that there was "no breach" of the settlement agreement because it "does not contain an indemnity clause entitling Lamson to recover from YSD amounts Lamson expended under its guarantees."

We may generally reach an issue of law on appeal if the district court has resolved it. *See United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) ("[T]here can be no forfeiture 'where the district court nevertheless addressed the merits of the issue.'" (quoting *Blackmon–Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009)). Despite the fact that the parties' positions appear to have evolved over time, Lamson's current claims were encompassed in its pleadings and arguments before the district court at the time of the summary judgment ruling. Given that the district court was specifically informed by Lamson of the implied duty to reimburse and ruled on the issue, I conclude that Lamson's argument was sufficiently before the district court to preserve it for appeal.

In my view, defendants have failed to show at the summary judgment stage that Lamson is not owed reimbursement for the substantial sums it incurred under the guarantee due to defendants' conduct. I therefore respectfully dissent from the majority's disposition of that portion of Lamson's claim against them.