RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0031p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

STRYKER EMPLOYMENT COMPANY, LLC, a Michigan
limited liability company; HOWMEDICA OSTEONICS
CORPORATION, a New Jersey corporation subsidiary of
Stryker Corporation,

　　　　　　　　　　*Plaintiffs-Appellees*,

　　　　*v.*

JAFAR ABBAS,

　　　　　　　　　　*Defendant-Appellant.*

No. 22-1563

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:22-cv-00531—Jane M. Beckering, District Judge.

Decided and Filed:  February 16, 2023

Before:  SUTTON, Chief Judge; CLAY and BUSH, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  Bradley K. Glazier, BOS & GLAZIER, P.L.C., Grand Rapids, Michigan, Matthew
W. Daley, WITHERSPOON KELLEY, Spokane, Washington, for Appellant on the Merits and
Reply Briefs.  Bradley K. Glazier, CUNNINGHAM DALMAN, Grand Rapids, Michigan,
Matthew W. Daley, HAWLEY TROXELL, Spokane, Washington, for Appellant on the
Supplemental Brief.  Andrea J. Bernard, Charles R. Quigg, Jarrod H. Trombley, WARNER
NORCROSS + JUDD LLP, Grand Rapids, Michigan, for Appellees.

---

**OPINION**

---

CLAY, Circuit Judge.  Defendant Jafar Abbas appeals the district court's issuance of a preliminary injunction on behalf of Plaintiffs Stryker Employment Company, LLC, and Howmedica Osteonics Corporation that seeks to enforce various confidentiality, noncompetition, and nonsolicitation agreements pertaining to Abbas' employment with Stryker.  On appeal, Abbas challenges the preliminary injunction's restriction of his employment options and his ability to be represented by specific attorneys.  For the reasons set forth below, we **AFFIRM**.

## I.  BACKGROUND

### A.  Factual Background

#### 1.  Abbas and Stryker

Stryker develops, manufactures, and sells spinal implants and products.  Howmedica is Stryker's sole managing member.  Stryker employed Abbas from 2013 through mid-2022. Although Abbas purports to have worked exclusively within Stryker's finance department, Plaintiffs aver that Abbas worked in various roles across the company, including in sales.

According to Plaintiffs, Abbas led various sales and finance projects; developed calculation and reporting tools; and built relationships with customers, distributors, and sales representatives.  It is generally undisputed that Abbas had access to and regularly used significant amounts of Stryker's confidential information and trade secrets, and that Abbas supported Stryker's litigation efforts.

Abbas entered into confidentiality, noncompetition, and nonsolicitation agreements with Stryker when he commenced his employment, and again entered into such agreements with Stryker in April 2022.  All parties agree that the April 2022 agreement ("Agreement") is the operative agreement for this appeal.  It is also undisputed that Michigan law governs the Agreement.

Section 5.1 of the Agreement contains a broad confidentiality provision barring Abbas from disclosing, using, disseminating, identifying, or publishing Stryker's confidential information without first securing Stryker's written consent. The Agreement defines confidential information to include "know-how, trade secrets, and technical, business and financial information and any other nonpublic information in any way learned by [Abbas], disclosed to [Abbas] or developed by [Abbas] during [his] employment with Stryker," and it includes numerous specific examples of such information. Agreement, R. 1-1, Ex. A, Page ID #33–34.

Section 6.3(a) of the Agreement contains a noncompetition provision prohibiting Abbas from rendering services for "any Conflicting Organization in which the services [he] may provide could enhance the use or marketability of a Conflicting Product or Service by application of Confidential Information which [he] had access to during [his] employment" for one year after leaving Stryker. *Id.* at Page ID #37. The Agreement defines a "Conflicting Organization" as "any person or organization which is engaged in or about to become engaged in research on, consulting regarding, or development, production, marketing, or selling of a Conflicting Product or Service." *Id.* at Page ID #34. It defines "Conflicting Product or Service" as "any product, process, technology, machine, invention or service of any person or organization other than Stryker in existence or under development which is similar to, resembles, competes with or is intended to resemble or compete with a product, process, technology, machine, invention or service upon which" Abbas worked or was knowledgeable about within the last two years of his time with Stryker, "or while providing products or services to a Stryker customer." *Id.*

### 2. Abbas and Alphatec

This dispute derives from Abbas' resignation from Stryker and subsequent employment with nonparty Alphatec Spine, Inc. Alphatec also manufactures and sells implants for use in spinal surgeries, and all parties agree that Alphatec and Stryker are competitors. Plaintiffs aver that "Alphatec and Stryker . . . regularly compete to place implants in the same hospitals, often where Stryker . . . has placed, or is negotiating to place, capital equipment which aids in the sale of implants, a sales strategy that Abbas is deeply familiar with through" his work with Stryker. Appellees' Br. at 10 (citing Verified Compl., R. 1-1, Page ID #22). In addition, Plaintiffs allege that "Alphatec has employed a strategy to systematically misappropriate Stryker['s] confidential

information, trade secrets, customer goodwill, and talent by raiding Stryker['s] key sales personnel." *Id.* (citing Verified Compl., R. 1-1, Page ID #19).

Plaintiffs are currently litigating against Alphatec and former Stryker employees in at least three cases in United States District Courts. Plaintiffs allege that those suits are aimed at defending against what they characterize as Alphatec's unsavory practices, protecting Styker's confidential information, and enforcing contractual relationships. Those cases include one pending in the United States District Court for the Middle District of Florida, *Howmedica Osteonics Corp. v. Alphatec Spine, Inc.* (3:21-cv-00789), and two others in the United States District Court for the District of New Jersey: *Howmedica Osteonics Corp. v. Howard et al.* (2:19-cv-19254) and *Howmedica Osteonics Corp. v. Lewers et al.* (2:20-cv-14310) (collectively, the "Alphatec Litigation").

Alphatec began recruiting Abbas for a finance position in the summer of 2021. According to Abbas and Jason Hamilton, who works for Alphatec as an in-house attorney, Abbas and Hamilton met "to thoroughly review and discuss Abbas' noncompetition obligations to Stryker . . . ." Appellant's Br. at 10; *see also* Abbas Decl., R. 11-1, Page ID #178–79; Hamilton Decl., R. 11-2, Page ID 191–92. The two aver that, "based upon that analysis and those discussions, Abbas and Alphatec decided against proceeding" because "[i]t became apparent that the Alphatec finance position was too closely aligned with Abbas's work for Stryker to permit him to comply with his non-compete obligations." Appellant's Br. at 10; *see also* Abbas Decl., R. 11-1, Page ID #178–79; Hamilton Decl., R. 11-2, Page ID #191–94.

However, in May 2022, Abbas resigned from Stryker to take a newly developed position with Alphatec. Abbas and Hamilton assert that Abbas' new position "was a sales role" that Alphatec and Abbas "crafted to protect Stryker's confidential information from disclosure." Appellant's Br. at 13 (citing Abbas Decl., R. 11-1, Page ID #181; Hamilton Decl., R. 11-2, Page ID #195–96). Specifically, the two aver that they "*removed* aspects of the position's initial job duties to ensure that the job duties were fully dissimilar to Abbas' role with Stryker" and limited Abbas' role even further for the one-year restricted period. *Id.* Stryker was not convinced. After corresponding with Alphatec, Stryker determined that "Abbas would be performing many of the same duties for Alphatec that he previously performed for Stryker . . . ." Appellees' Br. at

13 (citing E-Mails, R. 11-3, Ex. 1, Page ID #210–11). Alphatec continued to assure Stryker that Abbas' duties would be unrelated to his duties with Stryker, and that Alphatec would insulate Abbas from any conflicts with the Agreement.

Stryker was also concerned that Abbas' and Alphatec's compensation agreement provided incentives for Abbas "to do whatever he can to take business from Stryker . . . ." *Id.* According to Stryker, Abbas' behavior during his last days on the job exacerbated its suspicions. Most concerning was Abbas' request to participate in a weekly sales meeting, which Stryker found "suspicious" and denied. Verified Compl., R. 1-1, Page ID #22. For his part, Abbas alleges that he "regularly attended" those meetings. Abbas Decl., R. 11-1, Page ID #183. Because of their concerns about Abbas' new position at Alphatec, Plaintiffs commenced this action.

**B. Procedural History**

In June 2022, one week after Abbas left Stryker, Plaintiffs filed their verified complaint in the Kalamazoo County Circuit Court. Plaintiffs asserted two claims for relief: (1) breach of contract; and (2) misappropriation of trade secrets in violation of the Michigan Uniform Trade Secrets Act, Mich. Comp. Laws §§ 445.1901, *et seq.* Plaintiffs alleged that Abbas' breach of contract would cause it "irreparable damage and injury in an amount that will be exceedingly difficult to calculate but which will surely exceed $25,000." Verified Compl., R. 1-1, Page ID #27. Earlier in their verified complaint, Plaintiffs asserted that the case "involves a dispute in excess of $25,000 . . . ." *Id.* at Page ID #12.

Plaintiffs requested that the state court issue a no-notice temporary restraining order ("TRO"), and thereafter issue a preliminary and permanent injunction prohibiting Abbas from: (1) working for Alphatec or another Conflicting Organization for 12 months; (2) disclosing Stryker's confidential information or trade secrets; (3) soliciting Stryker's employees, contractors, or agents to leave Stryker; and (4) having any *ex parte* communications with any attorneys who represent Alphatec or any other defendants in the Alphatec Litigation. Beyond that request, Plaintiffs sought an order requiring Abbas to return all of Stryker's confidential information and trade secrets in his possession; awarding Plaintiffs costs and attorney's fees "in

an amount to be determined in excess of $25,000;" allowing expedited discovery; and granting other equitable relief, including punitive damages. *Id.* One day later, the state court granted Plaintiffs' TRO request.

Later that month, citing diversity jurisdiction, Abbas removed the case to the United States District Court for the Western District of Michigan. Abbas asserted that diversity of citizenship existed because Abbas is a California citizen, Stryker is a Michigan citizen, and Howmedica is a New Jersey citizen. At that point, however, Stryker's citizenship was not clear. Stryker is a limited liability company, and Stryker averred that Howmedica is Stryker's "sole managing member." *Id.* at Page ID #11. But the record was silent as to whether Stryker has other, non-managing members.

Abbas also averred that the jurisdictional amount-in-controversy was satisfied because Plaintiffs' allegations "and the non-monetary relief and damages articulated" in their verified complaint "make clear" that Plaintiffs "actually seek[] damages well in excess of $75,000." Notice of Removal, R. 1, Page ID #5. Abbas supported that averment by indicating that the injunction Plaintiffs seek "would cost Mr. Abbas more than $75,000 in lost income from his current position with Alphatec." *Id.* Moreover, Abbas asserted, "taking together Plaintiffs' claims for injunctive relief, exemplary damages, and costs, interest and attorney's fees, the matter in controversy substantially exceeds the sum or value of $75,000.00, exclusive of interest and costs . . . ." *Id.* at Page ID #5–6. The record is silent as to whether the district court inquired into whether removal was proper.

Shortly after Abbas removed the case, the district court granted Plaintiffs' motion to extend the TRO and set a briefing schedule and show cause hearing for Plaintiffs' request for a preliminary injunction. At the end of its show cause hearing, the district court granted Plaintiffs' motion for a preliminary injunction and delivered a lengthy oral opinion. In announcing its opinion, the court weighed Plaintiffs' request against the four factors that govern the issuance of a preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

After reviewing the evidentiary record and asking questions of counsel, the district court made several important preliminary factual findings. First, it found that Abbas worked for Stryker in *both* sales and finance. Second, it found evidentiary support for Plaintiffs' allegation that "Abbas, for years, had persistent and unfettered access to Stryker['s] most sensitive customer, sales, and financial information, and direct contact with Stryker['s] internal and external sales representatives and key customer decision-makers." Hr'g Tr. R. 17, Page ID #339. Third, it rejected Abbas' averment "that the projects on which Abbas will be working [for Alphatec] are not similar to the work he performed for Stryker . . . ." *Id.* at Page ID #347. Fourth, it found support in the record for and credited Plaintiffs' allegation that Abbas supported Stryker on litigation matters.

Based upon those factual findings, the court determined that the preliminary injunction factors weighed in Plaintiffs' favor. First, it found that Plaintiffs were likely to prevail on their breach of contract claim.[1] Second, the court held that Plaintiffs faced the threat of irreparable injury in the form of "loss of established goodwill" and "competitive losses . . . ." *Id.* at Page ID #349.[2] Third, the court determined that the balance of equities tipped in Plaintiffs' favor. In reaching that determination, the court observed that Stryker was simply asking for its contract to be enforced; that Alphatec had Abbas on paid leave; and that Plaintiffs faced the threat of serious harm. Finally, the court agreed with Plaintiffs that "the public interest lies in enforcing written contracts" and observed that Abbas did "not expressly address this factor." *Id.* at Page ID #354. Accordingly, the court granted Plaintiffs' motion for a preliminary injunction.

At issue in this appeal are the preliminary injunction's first and fifth paragraphs. Paragraph 1 prohibits Abbas from working or rendering services in any capacity for Alphatec or any other "Conflicting Organization as the term is defined and used" in the Agreement. Prelim. Inj., R. 15, Page ID #276. Paragraph 5 prohibits Abbas from "having any ex parte communications, written or verbal, with any attorneys who represent Alphatec or any other defendants in the [Alphatec Litigation], or otherwise disclosing any privileged or strategic information related to Stryker [] or its litigation strategies in those matters." *Id.* at Page ID #277.

---

[1]The court declined to rule on whether Plaintiffs were likely to prevail on their trade secrets claim.

[2]The court also observed that Abbas did not address this factor in his briefs.

After the court delivered its oral opinion, Abbas' counsel inquired into the preservation status of its arguments regarding the so-called inevitable disclosure doctrine. The court observed that Abbas failed to brief that issue, and that his counsel raised it for the first time during oral argument. It nevertheless allowed Abbas' counsel to develop the issue further. The court rejected Abbas' argument once more. Abbas' timely appeal followed.

The record suggests that Abbas is currently on paid leave from Alphatec. In a sworn declaration that Abbas attached to his district court briefing, Hamilton asserted that "Abbas remain[s] on paid leave [] pending the [district court's] decision regarding Stryker's request for a preliminary injunction." Hamilton Decl., R. 11-2, Page ID #202. At the show cause hearing, Abbas' attorney indicated that Abbas would remain on paid leave "at least until we get an order entered . . . ." Hr'g Tr., R. 17, Page ID #369. Abbas now indicates in his brief on appeal that he remains on paid leave.

## II.  DISCUSSION

On appeal, Abbas argues: (1) that the preliminary injunction is too broad; (2) that the district court erred in applying the "inevitable disclosure doctrine;" and (3) that the preliminary injunction impermissibly disqualifies counsel. Before the Court addresses those arguments, we will first determine whether subject matter jurisdiction exists.

### A.  Standard of Review

"In reviewing the district court's determination concerning its jurisdiction," the Court "review[s] the [district] court's findings of fact for clear error and conclusions of law *de novo*." *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 326 (6th Cir. 1990)). "While the ultimate decision to grant or deny a preliminary injunction is reviewed for an abuse of discretion, [the Court reviews] the district court's legal conclusions *de novo* and its factual findings for clear error." *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012).

## B. Analysis

### 1. Subject Matter Jurisdiction

The parties agree that subject matter jurisdiction exists. Nevertheless, this Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citations omitted).

At first, it was unclear whether diversity jurisdiction existed. Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different States. 28 U.S.C. § 1332(a). For the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). "A limited liability company has the citizenship of each of its members." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

Abbas' notice of removal is silent as to the citizenship of Stryker's members. Plaintiffs' verified complaint stipulates that Howmedica is Stryker's "sole managing member," but it is silent as to whether Stryker has other, non-managing members. Verified Compl., R. 1-1, Page ID #11.[3] This Court ordered supplemental briefing to determine whether diversity of citizenship exists and Plaintiffs clarified that "at all relevant times, [Stryker's] sole member has been Howmedica . . . ." Appellees' Suppl. Br., ECF No. 28, 5. Accordingly, because Abbas is a California citizen; Howmedica is a New Jersey citizen; and Stryker is a New Jersey and Michigan citizen, diversity of citizenship exists.

The initial record similarly left unclear whether the amount-in-controversy requirement is satisfied. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) (citing cases). This Court has "observed that the costs of complying with an injunction . . . may establish the amount-in-

---

[3]Abbas' notice of removal asserts that Stryker is a Michigan citizen, and fails to observe that because Howmedica is a New Jersey citizen, so too is Stryker. That failure exacerbated concerns around Abbas' allegations with respect to citizenship.

controversy." *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (citing *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006), *abrogated on other grounds by Hertz*, 559 U.S. at 77)).

Abbas' notice of removal asserts that the amount in controversy requirement is satisfied by the costs the preliminary injunction impose on *him*. But this Court has never held that the costs imposed on a defendant can satisfy the amount in controversy requirement. *Everett*, 460 F.3d at 829. Abbas also included a conclusory assertion that Plaintiffs seek punitive damages exceeding $75,000. Plaintiffs' supplemental brief, however, suggests that the amount-in-controversy requirement is satisfied. Plaintiffs aver that:

> although Stryker['s] state-court complaint does not explicitly allege that the amount in controversy exceeds $75,000—because that threshold is irrelevant in state court—it leaves no doubt that the amount in controversy exceeded $75,000 at the time of removal from Stryker['s] perspective. Among other things, Abbas had access to and used Stryker['s] confidential information to negotiate and close multimillion dollar deals with Stryker['s] customers—information that his new employer, Alphatec [] could use to steal similar future business from Stryker[].

Appellees' Suppl. Br., ECF No. 28, 3. Thus, considering the value of what Plaintiffs seek to protect, along with possible punitive damages, the amount in controversy appears to exceed $75,000. *See Hunt*, 432 U.S. at 347; *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). We therefore find that subject matter jurisdiction exists.

## 2. The Noncompetition Provision

On appeal, Abbas contends that the preliminary injunction's noncompetition provision: (1) amounts to an impermissible industry-wide ban; and (2) is inconsistent with the Agreement. The Court addresses those arguments in turn.

### a. Industry-Wide Ban

Paragraph 1 of the preliminary injunction prohibits Abbas from working for or rendering services in any capacity for Alphatec or any other "Conflicting Organization as the term is defined and used" in the Agreement. Prelim. Inj., R. 15, Page ID #276. Abbas contends that the

district court's prohibition constitutes an industry-wide ban, which is "unenforceable under Michigan law." Appellant's Br. at 29.

In his brief, Abbas devotes considerable argument to Michigan law concerning the validity of noncompetition agreements. But Abbas does not challenge the validity of the Agreement's noncompetition restriction. Indeed, his argument seems to be that though the Agreement's noncompetition prohibition is presumably valid, the preliminary injunction contains a broader noncompetition prohibition than exists in the Agreement. Because Abbas does not challenge the validity of the Agreement's noncompetition provision, the applicability of Michigan law concerning the validity of noncompetition clauses is not at issue.

Although Michigan law governs Plaintiffs' breach-of-contract claim, federal law defines the district court's power to issue a preliminary injunction. *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam) (citations omitted). "In fashioning relief against a party who has transgressed the governing legal standard, a court of equity is free to proscribe activities that, standing alone, would have been unassailable." *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994) (quoting *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 390 (5th Cir. 1977)).

Abbas' argument that the preliminary injunction's noncompetition prohibition was overly broad fails for at least three reasons. First, the district court selected its language with the knowledge that Abbas often worked beyond "the scope" of his official position while on the job. Hr'g Tr., R. 17, Page ID #351. Thus, the court, in its discretion, used broad language to maintain the status quo. Second, and more importantly, the district court's issuance of the preliminary injunction came with the proviso that it *encouraged* Abbas to work with Alphatec and Stryker to craft a job agreement that would not violate the Agreement. It also said that it would entertain a subsequent motion to vacate the preliminary injunction if Alphatec crafted a new position that

Stryker still found unacceptable.   In other words, the district court crafted a preliminary injunction to preserve the status quo, and it reserved the possibility of considering whether other prospective jobs Abbas might be offered are consistent with the terms of the Agreement.   Third, as the Court discusses below, the preliminary injunction seeks only to enforce the Agreement. And because Abbas' argument that the preliminary injunction amounts to an industry-wide ban does not comport with the district court's flexible approach to preserving the status quo, and because the preliminary injunction is consistent with the Agreement, Abbas' argument fails.  *See Int'l Refugee Assistance Project*, 137 S. Ct. at 2087.

### b. *Consistency with the Agreement*

Abbas contends that the preliminary injunction's noncompetition provision is inconsistent with the Agreement's plain terms.  We disagree.

In his brief, Abbas observes accurately that "[u]nder a plain reading, the Agreement's non-compete only precludes Abbas from working for a competitor if such work:  (i) may result in the 'application' of Stryker's purported Confidential Information; or (ii) overlap with his Stryker job responsibilities during the 24-months preceding Abbas's separation."   Appellant's Br. at 33.  The district court made factual findings that Abbas' position with Alphatec implicated both of those possibilities, and the court supported those findings by citing to relevant evidence. The preliminary injunction is therefore consistent with the Agreement with respect to Abbas' prospective position with Alphatec.

The next issue is whether the district court went too far by extending the injunction to other conflicting organizations.   The district court addressed that issue explicitly when it delivered its oral opinion:

> The express language of the contract is in play here, and Mr. Abbas promised by
> the plain language of that contract not to work for a competing organization.  He
> willingly signed it in exchange for stock options not to work for a competing
> organization in which he could use trade secret information or in a job which is
> similar to that which he held in the previous 24 months.

Hr'g Tr., R. 17, Page ID #368.  The district court is correct, and the preliminary injunction was consistent with the terms of the Agreement.  That, coupled with the fact that the district court is

amenable to modifying the order if the parties identify a position for Abbas that does not run afoul of the Agreement's proscriptions, indicates that the district court did not abuse its discretion.

In sum, Abbas' argument that the preliminary injunction should be reversed because it is an impermissible industry-wide ban fails; as a practical matter, it is *not* an industry-wide ban. In addition, Abbas' argument that the preliminary injunction's noncompetition restriction is inconsistent with the Agreement fails because the preliminary injunction serves only to enforce the Agreement's noncompetition provision.

### 3. The Inevitable Disclosure Doctrine

Before addressing Abbas' argument concerning the "inevitable disclosure doctrine," the Court must examine whether Abbas preserved the issue. To preserve an issue for appellate review, a litigant must "state the issue with sufficient clarity to give the court and opposing parties notice that it is asserting the issue" and provide "some minimal level of argumentation in support of it" before the district court. *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009). The litigant must also present the issue in his appellate briefing. *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 610–11 (6th Cir. 2016).

Although Abbas thoroughly briefs his arguments on appeal concerning the inevitable disclosure doctrine, he did not initially raise the arguments in his briefing before the district court. Instead, he raised the arguments for the first time at the show cause hearing, prompting the district court to observe that the arguments came as a "surprise." Hr'g Tr., R. 17, Page ID #363.

Plaintiffs contend that "Abbas failed to adequately preserve [his inevitable disclosure] argument in the district court and therefore waived it." Appellees' Br. at 23. To support that argument, Plaintiffs rely upon this Court's opinion in *Lamson & Sessions Co. v. Peters*, 576 F. App'x 538 (6th Cir. 2014). In that case, the Court found that the plaintiff failed to preserve an issue that it raised for the first time before the district court at oral argument. *Id.* at 543. However, since issuing its unpublished opinion in *Lamson*, this Court has clarified its decision. In a published opinion in *Bard v. Brown County, Ohio*, the Court held that when a litigant

"unequivocally identifie[s its] theory at [a] district-court hearing and provide[s] argumentation in support of it," that party "has not forfeited it on appeal." 970 F.3d 738, 749 (6th Cir. 2020); *see also Huntington*, 574 F.3d at 332. In this case, Abbas identified and presented arguments to support his theory before the district court. He therefore preserved the issue.

As to the merits of Abbas' argument, Abbas contends that the district court "erred in accepting Stryker's invitation to apply the 'Inevitable Disclosure Doctrine.'" Appellant's Br. at 35. That argument concerns Plaintiffs' trade secrets claim, and fails for a very simple reason— the district court did not apply the inevitable disclosure doctrine. Although the district court responded briefly to and rejected the inevitable disclosure arguments that Abbas' counsel raised at the show cause hearing, it explicitly declined to consider Plaintiffs' trade secrets claim in ruling on their motion for a preliminary injunction. Because that argument is related only to the trade secrets claim, it is irrelevant to this appeal.

### 4. Communication with Counsel

The preliminary injunction's Paragraph 5 prohibits Abbas from:

> having any ex parte communications, written or verbal, with any attorneys who represent Alphatec or any other defendants in the lawsuits in the United States District Court for the District of New Jersey titled *Howmedica Osteonics Corp. v. Howard et al.* (2:l9-cv-19254) and *Howmedica Osteonics Corp. v. Lewers et al.* (2:20-cv-14310), and/or the lawsuit filed in the United States District Court for the Middle District of Florida titled *Howmedica Osteonics Corp. v. Alphatec Spine, Inc.* (3:21-cv- 00789), or otherwise disclosing any privileged or strategic information related to Stryker Spine or its litigation strategies in those matters.

Prelim. Inj., R. 15, Page ID #277. On appeal, Abbas contends that Paragraph 5 impermissibly disqualifies counsel. Plaintiffs respond by noting that "Abbas cites no law prohibiting a district court from including a provision like Paragraph 5 in a preliminary injunction," Appellees' Br. at 33, and that "Paragraph 5 is not simply a reasonable limitation, it is the only limitation that prevents Alphatec from invading Stryker['s] confidential and privileged information," *id.* at 37. We hold that Paragraph 5 does not constitute an abuse of discretion.

The district court based Paragraph 5 upon important factual findings. In its oral opinion, the district court found that Abbas "was privy to confidential information that if disclosed to

Alphatec or Alphatec's counsel, would detrimentally affect Stryker." Hr'g Tr., R. 17, Page ID #352. The court made that determination after considering relevant evidence, and Abbas provides no argument that the finding was clearly erroneous. Based upon that finding, the court concluded that the prohibition was "an appropriate measure to protect Plaintiffs' confidential and privileged information." *Id.* at Page ID #354.

> Beyond those findings, Plaintiffs defend Paragraph 5 by arguing persuasively that:

> [t]o effectively represent Abbas, a lawyer representing him must necessarily probe his knowledge of Stryker['s] confidential or otherwise protected information (*e.g.*, information protected by the attorney-client privilege). If that lawyer also represents Alphatec, however, the lawyer would have a competing ethical duty of loyalty and disclosure to Alphatec, which would compel the lawyer to seek Abbas's consent to share the information with Alphatec or else be forced to withdraw.

Appellees' Br. at 35; *see Restatement (Third) of the Law Governing Lawyers* § 60 cmt. l (2000). In addition, Plaintiffs note that even if Abbas consented to his counsel disclosing Stryker's confidential information to Alphatec, that counsel might violate the Michigan Rules of Professional Conduct, which prohibit using "methods of obtaining evidence that violate the legal rights of [a third party]." MRPC 4.4. "Crafting a preliminary injunction is an exercise of discretion and judgment . . . ." *Int'l Refugee Assistance Project*, 137 S. Ct. at 2087 (citations omitted). The district court did not abuse its discretion in finding Paragraph 5 to be a prudent and temporary means of protecting Plaintiffs' rights.

### 5. Preliminary Injunction Factors

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015) (quoting *Gonzales v. Nat'l Bd. Of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000)). Although Abbas did not properly focus his arguments on the

four preliminary injunction factors, this Court is compelled to review the preliminary injunction against those factors.

"The first factor to consider is whether the plaintiff has demonstrated 'a strong likelihood of success on the merits.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). To satisfy that factor, "[i]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.* (quotation and citation omitted).

The district correctly determined that Plaintiffs were likely to succeed on the merits. In concluding that Plaintiffs were likely to prevail on their breach of contract claim, the district court relied on the following findings of fact: (1) that Abbas worked for Stryker in *both* sales and finance; (2) that Abbas had persistent and unfettered access to Stryker's most sensitive sales and financial information, as well as contact with Stryker's internal and external sales representatives and key customer decision-makers; (3) that Abbas' prospective position with Alphatec involved work similar to the work he performed for Stryker; and (4) that Abbas supported Stryker on litigation matters. Based upon those findings, the district court concluded that "[t]he record supports the preliminary conclusion that [Abbas'] prior and current positions are in conflict and that [Plaintiffs] will likely succeed on the merits of their breach of contract claim . . . ." Hr'g Tr., R. 17, Page ID #347–48. The district court's factual findings were based upon reasoned consideration of relevant evidence, and, accepting those findings, the court rightly concluded that Plaintiffs were likely to prevail on its breach of contract claim. Abbas cites no authority that suggests otherwise.

The district court found that absent injunctive relief, Plaintiffs risked irreparable injury. Abbas failed to address that factor below or in his opening brief. Similarly, Abbas failed to address how the noncompetition provision affects the public interest. The district court correctly observed that the public interest lies in enforcing contracts. As to the balance of equities, although Abbas never uses that phrase in his brief, most of his arguments implicitly concern that factor. The district court determined, however, that the balance of equities tips in Plaintiffs' favor because they simply seek to enforce their contractual rights. That holding does not

constitute an abuse of discretion. Accordingly, this Court will not disturb the district court's holding that the preliminary injunction factors weighed in Plaintiffs' favor and supported granting Plaintiffs' motion for preliminary injunction.

**CONCLUSION**

For the reasons stated above, the Court **AFFIRMS** the district court's issuance of a preliminary injunction.