NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0404n.06

Case No. 22-2082

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 14, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| EARL D. BOOTH, | ) | |
|     Plaintiff-Appellant, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| HEIDI E. WASHINGTON, in her official | ) | MICHIGAN |
| capacity; SCOTT FINK, in his official | ) | |
| capacity, | ) | |
|     Defendants-Appellees. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

SUTTON, Chief Judge. Earl Booth claims that the First and Fourteenth Amendments allow a state prison employee to make off-duty, at-home social media posts about his on-the-job operations, no matter the impact on his work. The district court disagreed. And so do we. We affirm.

I.

In 2020, the Michigan Department of Corrections promulgated a speech policy permitting personnel to "express themselves as private citizens on social media." R.1-1 at 1. The policy allows employees to post online so long as their remarks "do not impair working relationships, impede the performance of duties, or negatively affect the public perception of the Department." *Id.* This rule prevents staff from divulging "information concerning official business,"

"discredit[ing] the Department or its employees," and "harming the Department's reputation or negatively affecting [its] efficiency." *Id.* And it allows the Department to discipline employees if their online activity appears "detrimental to the Department." *Id.*

This warning did not deter Earl Booth, a guard with the Michigan Department of Corrections. After shifts at the prison, Booth often logged onto his personal Facebook account. There, he communicated his qualms about his colleagues' performance. In one instance, he shared pictures of a supervisor's private disciplinary records. In others, he disparaged the Department's Director and Deputy Director. And in one particularly noteworthy post, he published a video of an inmate punching him inside the prison, attaching a caption that criticized a fellow officer on duty at the time of the assault and that commented on court proceedings involving the inmate.

After the last Facebook post, the Department opened an investigation into Booth. That investigation remains pending, and the Department has not yet penalized Booth. In response, Booth filed a facial challenge to the policy's constitutionality and moved for a preliminary injunction against all off-duty, off-worksite enforcement of the policy. The district court denied the preliminary injunction. Booth appealed. Neither side asked for oral argument.

## II.

To prevail, Booth must show that (1) he is likely to succeed on the merits; (2) he will face irreparable injury absent an injunction; (3) the balance of equities tilts in his favor; and (4) an injunction furthers the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Our analysis, as the parties agree, largely turns on the first factor: the likelihood of success on the merits. *Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020) (per curiam) (order). We review the district court's decision for abuse of discretion. *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372,

380 (6th Cir. 2023). But we look at its legal conclusions as to the factors with fresh eyes. *Arizona v. Biden*, 40 F.4th 375, 381 (6th Cir. 2022).

*Likelihood of success on the merits*. A citizen does not forfeit his First Amendment rights when he becomes a government employee. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Nonetheless, individuals submit to "certain limitations on [their] freedom" to serve their locality, state, or nation. *Id.* at 418. When a government employee speaks as a private citizen, we balance the employee's interest "in commenting upon matters of public concern" against the government's interest "in promoting the efficiency of [] public services." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *see Connick v. Myers*, 461 U.S. 138, 149 (1983) (noting that a government workplace need not be "a roundtable for employee complaints over internal office affairs").

The problem for Booth is that he claims the First Amendment permits a government employee to say whatever he wishes as a private citizen, so long as it is after hours. He offers no authority for this position from any court. And we know of none. One explanation for this dearth of authority is the reality that this approach would overrule the *Pickering* balancing test. That test applies to speech offered during the workday *and* after it, and it makes no difference that the employment regulation refers to the content of the speech, as most employer restrictions on speech do. *See Rankin v. McPherson*, 483 U.S. 378, 388 (1987); *Connick*, 461 U.S. at 154. One of the considerations to balance under the *Pickering* test is the greater liberty interest in speaking freely after hours and the decreased liberty interest in speaking freely during the workday. *Garcetti*, 547 U.S. at 426; *Connick*, 461 U.S. at 153. Why consider these distinctions, among many others, if the test is the bright line rule Booth advocates—that all such speech can never be restricted, no matter its impact on the prison, workplace privacy, discipline, and other legitimate employment considerations.

*Other factors.* The remaining factors do not salvage Booth's case. He has not suffered irreparable harm because the First Amendment does not protect his speech. *See Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th. Cir. 2002). The government has a legitimate interest in having such a policy. And the public interest is served by permitting that policy to remain in place.

We affirm.