RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0107p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

RIETH-RILEY CONSTRUCTION CO., INC.; SCOTT D. MEADE; DANIEL RANGER; MICHAEL J. COURTNEY,
               *Plaintiffs-Appellants*,

      *v.*

TRUSTEES OF THE OPERATING ENGINEERS' LOCAL 324 FRINGE BENEFIT FUNDS; OPERATING ENGINEERS LOCAL 324 HEALTH CARE PLAN; OPERATING ENGINEERS' LOCAL 324 PENSION PLAN; OPERATING ENGINEERS' LOCAL 324 DEFINED CONTRIBUTION PLAN; OPERATING ENGINEERS' LOCAL 324 VACATION AND HOLIDAY FUND; OPERATING ENGINEERS LOCAL 324 JOURNEYMAN AND APPRENTICE TRAINING FUND; OPERATING ENGINEERS LOCAL 324 RETIREE BENEFIT FUND; ROBERT ADCOCK; KEVIN BESONEN; TODD DOENITZ; KENNETH DOMBROW; MATTHEW EVERLY; ERIC GARCIA; LEE GRAHAM; SCOTT HART; BRIAN HOFFMAN; ROB KRUEGER; LISA LAUZON; MIKE MALLOURE; JEFF MCCARTHY; BRANDIE MEISNER; KEN NOWICKI; RYAN O'DONNELL; JAMES OLEKSINSKI; BRANDON POPPS; DEVEN RAU; HEATH SALISBURY; DOUGLAS STOCKWELL; M.E. WOODBECK, JR.; BLAKE ZAPCZYNSKI; TONY BOLANOWSKI; JOSH GRAVES,
               *Defendants-Appellees*.

No. 25-1823

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Ann Arbor.
Nos. 5:24-cv-13124; 5:25-cv-10749—Judith E. Levy, District Judge.

Argued: March 19, 2026

Decided and Filed: April 3, 2026

Before: CLAY, GIBBONS, and HERMANDORFER, Circuit Judges.

---

**COUNSEL**

---

**ARGUED:** Philip Gutwein II, FAEGRE DRINKER BIDDLE & REATH, LLP, Indianapolis, Indiana, for Appellants. Daniel G. Levan, WEISMAN, YOUNG & RUEMENAPP, P.C., Bingham Farms, Michigan, for Appellees. **ON BRIEF:** Philip Gutwein II, Brian J. Paul, Emily A. Kile-Maxwell, FAEGRE DRINKER BIDDLE & REATH, LLP, Indianapolis, Indiana, Kristina F. Salamoun, FAEGRE DRINKER BIDDLE & REATH, LLP, Washington, D.C., for Appellants. Daniel G. Levan, Nancy H. Pearce, WEISMAN, YOUNG & RUEMENAPP, P.C., Bingham Farms, Michigan, for Appellees.

CLAY, J. delivered the opinion of the court in which GIBBONS and HERMANDORFER, JJ. joined. HERMANDORFER, J. (pp. 12–15), delivered a separate concurring opinion.

---

**OPINION**

---

CLAY, Circuit Judge. Plaintiffs Rieth-Riley Construction Company, Inc., Scott D. Meade, Daniel Ranger, and Michael J. Courtney filed these suits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Defendants Operating Engineers' Local 324 Health Care Plan, Operating Engineers' Local 324 Pension Plan, Operating Engineers' Local 324 Defined Contribution Plan, Operating Engineers' Local 324 Vacation and Holiday Fund, Operating Engineers' Local 324 Journeyman & Apprentice Training Fund, Operating Engineers' Local 324 Retiree Benefit Fund, and Fringe Funds' Trustees. Plaintiffs allege that Defendant Fringe Funds Trustees violated their fiduciary duties under ERISA. The district court dismissed Plaintiffs' complaints after finding that Plaintiffs' ERISA claims were preempted by the *Garmon* doctrine, denied Plaintiff Rieth-Riley Construction Company, Inc.'s motion for leave to file an amended complaint, and denied Plaintiffs' motions for preliminary injunction. Plaintiffs now appeal the district court's dismissal of this case and denial of those motions. For the reasons set forth below, we **AFFIRM** the district court's judgment.

# I.     BACKGROUND

## A.     Factual Background

Plaintiff Rieth-Riley Construction Co., Inc. ("Rieth-Riley") employs members of the Operating Engineers' Local 324 ("Local 324") for road construction work in Michigan. Some of those members include Plaintiffs Scott D. Meade, Daniel Ranger, and Michael J. Courtney ("Plaintiff Employees"). Between March 19, 2013 and May 2, 2018, Plaintiff Rieth-Riley's trade group, the Michigan Infrastructure and Transportation Association ("MITA"), and Local 324 operated under a collective bargaining agreement ("CBA" or the "Road Agreement"). The Road Agreement required Plaintiff Rieth-Riley to contribute to several of Local 324's plans or funds ("Fringe Funds") for every hour paid to each employee for work done pursuant to the agreement. Throughout this time period, Defendant Fringe Funds accepted Plaintiff's contributions. The Road Agreement was set to expire on June 1, 2018. To avoid triggering the agreement's "evergreen clause," under which the agreement would "continue in force from year to year" following its expiration on June 1, 2018, MITA and Local 324 mutually terminated the agreement on May 2, 2018. Road Agreement, R. 1-3, PageID #66.

Following the Road Agreement's termination, Local 324 refused to negotiate a new CBA with MITA or Plaintiff Rieth-Riley. All the while, Plaintiff Rieth-Riley attempted to maintain its contributions to Defendant Fringe Funds. But Defendant Fringe Funds initially refused to accept Plaintiff Rieth-Riley's contributions on the belief that the relationship between Plaintiff Rieth-Riley and Local 324 was governed by Section 8(f) of the National Labor Relations Act ("NLRA"). Plaintiff Rieth-Riley disagreed, contending that its relationship with Local 324 was governed instead by Section 9(a) of the NLRA, which required the maintenance of "the status quo of the terms and conditions of the Road Agreement while [the parties] bargained for a new CBA." Complaint, R. 1, PageID #9. Defendant Fringe Funds then acquiesced and accepted Plaintiff's contributions.

On September 9, 2024, Defendant Fringe Funds changed course. Its trustees threatened to cease accepting Plaintiff Rieth-Riley's contributions unless Plaintiff provide "'written confirmation' of its "agreement to comply with and be bound by the [Fringe] Funds' trust agreements, plan documents, policies and procedures enforceable under CBA and federal law."

*Id.* at PageID #12.   Plaintiff Rieth-Riley declined to sign that agreement, contending that Defendant Fringe Funds had "statutory status quo obligations under the NLRA to accept Rieth-Riley's contributions to the Fringe Funds on behalf of work performed by its employees that is covered under the status quo of the Road Agreement."  *Id.* at PageID #13.   Defendant Fringe Funds did not agree with Plaintiff Rieth-Riley's contention, so it stopped accepting Plaintiff's contributions from October 1, 2024 onwards.   Plaintiff Rieth-Riley has since placed its rejected contributions into escrow.

### B.    Procedural History

Plaintiff Rieth-Riley filed its complaint under ERISA, 29 U.S.C. § 1001 *et seq*.  It alleged that Defendant Fringe Funds Trustees violated their fiduciary duties of loyalty and prudence by refusing to accept Plaintiff's contributions to Defendant Fringe Funds.   It also effectively claimed that Sections 8(a)(5) and (8)(d) NLRA required Defendant Fringe Funds to continue accepting the contributions.

Plaintiff Rieth-Riley sought declaratory relief that these duties required Defendant Fringe Funds Trustees to accept Rieth-Riley's contributions.   Plaintiff Employees also filed their operative complaint under ERISA, likewise alleging that Defendant Fringe Funds Trustees were required by the NLRA to accept the contributions.   Plaintiffs each filed motions for preliminary injunctive relief to order Defendant Fringe Funds to accept those contributions and provide benefits to the employees who are the beneficiaries of the funds.   In an oral ruling, the district court denied Plaintiff Rieth-Riley's motion for preliminary injunction.

Defendants later filed a motion to dismiss arguing, *inter alia*, that the district court lacked subject matter jurisdiction over Plaintiffs' ERISA claims because the claims were preempted by the *Garmon* doctrine.   Plaintiff Rieth-Riley filed a motion for leave to file a first amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).   Defendants also filed a motion to dismiss Plaintiff Employees' operative complaint.   The district court granted Defendants' motions to dismiss without prejudice and denied Plaintiffs' motions for leave to file a first amended complaint and for a preliminary injunction.   Plaintiffs' timely appeal followed.

## II.     DISCUSSION

### A.     Standard of Review

We review a district court's dismissal for lack of subject matter jurisdiction *de novo*. *Hohman v. Eadie*, 894 F.3d 776, 781 (6th Cir. 2018).

### B.     Analysis

### 1.  Plaintiffs' ERISA Claims Are Precluded by the *Garmon* Doctrine

Sections 7 and 8 of the NLRA protect employees' right to unionize.  In particular, "'Section 7 of the NLRA guarantees employees the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and the right to refrain from those activities." *Rieth-Riley Constr. Co., Inc. v. NLRB*, 114 F.4th 519, 531 (6th Cir. 2024) (*Rieth-Riley II*) (quoting *Hendrickson USA, LLC v. NLRB*, 932 F.3d 465, 470 (6th Cir. 2019)); *see also* 29 U.S.C. § 157.  "Section 8 makes it an unfair labor practice for an employer 'to interfere with, restraint, or coerce employees in the exercise of the rights guaranteed in [Section 7],' including refusing to bargain collectively in good faith with the representatives of an employer's employees."  *Rieth-Riley II*, 114 F.4th at 531 (quoting 29 U.S.C. § 158(a)(1)).

Under Sections 8(a)(5) and (8)(d) of the NLRA, an employer has a "duty not to effect unilateral changes in most terms and conditions of employment . . . after the expiration date of a collective-bargaining agreement." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 203 (1991); *see* 29 U.S.C. §§ 158(a)(5), (d).  More specifically, employers "must 'freez[e] the status quo' and 'honor the terms and conditions of an *expired* collective bargaining agreement,'" including "bargained-for contributions to employee benefit funds," while negotiations are ongoing. *Operating Eng'rs' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co., Inc.*, 43 F.4th 617, 619 (6th Cir. 2022) (*Rieth-Riley I*) (quoting *Laborers Health & Wellness Tr. Fund for N. Ca. v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 544 n.6 (1988)).  "When an employer 'effects a unilateral change' to the status quo—say, by halting its contribution

payments—it commits an 'unfair labor practice' under § 8 of the NLRA." *Id.* (quoting *Litton*, 501 U.S. at 198).

"'When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act,' *Garmon* holds that 'the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.'" *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004) (quoting *S.D. Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959)). Two interests motivate this doctrine: "(1) 'the expressed congressional desire for uniformity in the nation's labor policy' and (2) the desire 'to make use of the [NLRB's] expertise in the area of labor relations.'" *Id.* (quoting *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1027 (6th Cir. 2001)).

This rule is subject to several exceptions. Relevant to the instant case is the independent federal remedy exception, which states that "federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies." *Id.* at 609 (quoting *Connell Constr. Co. v. Plumbers & Steamfitters Loc. Union No. 100*, 421 U.S. 616, 626 (1975)). Under this exception, "federal district courts may enforce congressional remedies created by a different federal statute so long as the statute does not conflict with §§ 7 or 8 of the NLRA and so long as litigants do not 'circumvent the primary jurisdiction of the NLRB simply by casting statutory claims [under §§ 7 or 8 of the NLRA] as violations of [an independent federal law].'" *Id.* at 610 (quoting *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 743–44 (1988)). This exception applies where a plaintiff can prove their claim "without ever having to establish a violation of the NLRA." *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 300 (6th Cir. 2011).

Plaintiffs challenge the district court's finding that the *Garmon* doctrine applies on two general grounds. First, Plaintiffs aver that their ERISA claims are not "arguably subject" to the NLRA. Second, Plaintiffs alleges that their ERISA claims otherwise satisfy the independent federal remedy exception.

### a.    Plaintiffs' ERISA Claims Are "Arguably Subject" to the NLRA

Plaintiffs bring two ultimately faulty arguments as to why their ERISA claims are not "arguably subject" to the NLRA. Plaintiffs first claim that the *Garmon* doctrine only applies to state law claims, not federal law claims. Next, Plaintiffs attempt to redefine the scope of the *Garmon* doctrine to only include federal claims within the jurisdiction of the NLRB.

Neither argument is meritorious. The *Garmon* doctrine applies to federal law claims arising from activity which is "arguably subject to § 7 or § 8 of the [NLRA]." *Trollinger*, 370 F.3d at 609 (quoting *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982)). Absent an applicable exception, federal courts relinquish jurisdiction over such activity and "must defer to the exclusive competence of the National Labor Relations Board." *Id.* (quoting *Kaiser Steel Corp.*, 455 U.S. at 83). Thus, the mere fact that Plaintiffs purport to bring a claim under ERISA does not automatically defeat the *Garmon* doctrine's reach. *See, e.g.*, *Advanced Lightweight*, 484 U.S. at 549 (applying the *Garmon* doctrine to sections 515 and 502(g)(2) of ERISA).

Plaintiffs next argue that their ERISA claims cannot be "arguably subject" to the NLRA because the NLRB lacks jurisdiction to adjudicate those claims. But this is a specious interpretation of the *Garmon* doctrine, and Plaintiffs provide no caselaw to support this proposition. The dearth of support is for good reason. One purpose of the doctrine is to respect the NLRB's "primary jurisdiction to determine what is or is not an unfair labor practice" under the NLRA. *Kaiser Steel Corp.*, 455 U.S. at 83; *see also Knafel v. Pepsi Cola Bottlers of Akron, Inc.*, 850 F.2d 1155, 1161 (6th Cir. 1988); *Trollinger*, 370 F.3d at 608. Whether other federal claims could be brought before the NLRB is immaterial to this inquiry, as was the case with the at-issue ERISA claims in *Advanced Lightweight*. 484 U.S. at 547, 552–53; *see also Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 576 (9th Cir. 2022) ("*Garmon* preemption does not require that a plaintiff have a certain remedy before the Board, or even that the Board will hear the claim in the first place." (citation modified)). Instead of looking to whether a federal claim could be brought before the NLRB, the "arguably subject" requirement asks us to consider whether the NLRA "arguably protects or prohibits" the alleged unlawful "conduct" that gave rise to that federal claim. *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. 174*, 598 U.S. 771, 776 (2023); *see also Garmon*, 359 U.S. at 244–45. After all, "the focus of the NLRB's primary

jurisdiction is the *potential for conflict* with federal policy" regarding labor law. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 952 (9th Cir. 2014) (citing *Garmon*, 359 U.S. at 246). Here, Plaintiffs allege that Defendant Fringe Funds Trustees violated their fiduciary duties under ERISA by ignoring their purported NLRA-based status-quo obligation to accept Rieth-Riley's contributions. On Plaintiffs' own theory, then, Defendants' conduct was "an 'arguable' violation of § 8 of the NLRA." *Advanced Lightweight*, 484 U.S. at 552. Thus, the fact that Plaintiffs' ERISA claims cannot be brought before the NLRB does not necessarily defeat the application of the *Garmon* doctrine.

### b. Plaintiffs' ERISA Claims Do Not Satisfy the Independent Federal Remedy Exception

Plaintiffs next assert that any labor law questions present in the instant case are "collateral issues" that may be brought under "independent federal remedies." Plaintiffs' Br., at 31–32. To Plaintiffs, their claims that Plaintiff Rieth-Riley has a statutory duty under the NLRA to maintain its contributions is merely a "background fact" to Defendants' alleged fiduciary duty under ERISA to accept all funds to which it is entitled to benefit the Funds' participants and beneficiaries. *Id.* at 34–36.

Plaintiffs' interpretation of the labor law questions at issue in this appeal is incomplete. To be sure, the operative complaints refer to Plaintiff Rieth-Riley's statutory duty under the NLRA to maintain contributions to Defendant Fringe Funds while CBA negotiations are ongoing. But both complaints also include Plaintiffs' contention that Defendants are similarly required by their own purported status-quo obligation under the NLRA to accept those contributions. Plaintiffs attempt to dress up this point as only a minor collateral part of their claims that Defendants breached their fiduciary duties of prudence and loyalty under ERISA. Not so. Plaintiffs' pleadings are clear that this labor law question is part and parcel of their ERISA claims and the relief they seek. *See* Complaint, R. 1, PageID #19 (seeking declaratory judgment and injunctive relief on the theory that both "Rieth-Riley and the Fringe Funds have [a] statutory obligation to maintain the status quo of the terms and conditions of the expired Road Agreement"); 25-cv-10749 Employees' Complaint, R. 44, PageID #823 ("The Trustees are required by the NLRA to continue accepting Rieth-Riley's contributions to the Fringe Funds for

work covered under the status quo of the terms and conditions of the expired Road Agreement while Rieth-Riley and Local 324 continue to negotiate for a successor CBA."). In other words, as pleaded in their complaints, Plaintiffs' ERISA claims can succeed "only if" Defendants' "conduct violates the NLRA," rendering the NLRA issues "anything but collateral." *Trollinger*, 370 F.3d at 610–11. Plaintiffs therefore "cast[] statutory claims [under §§ 7 or 8 of the NLRA] as violations of" ERISA and place the district court on a collision course with the NLRB's primary jurisdiction as to the issue of whether Defendant Trustees' refusal to accept Rieth-Riley's contributions is arguably an unfair labor practice. *Id.* at 610 (quoting *Beck*, 487 U.S. at 743–44). In such an instance, a district court must cede jurisdiction to the NLRB. *See Advanced Lightweight*, 484 U.S. at 552; *RiverStone Grp., Inc., v. Midwest Operating Eng'rs' Fringe Benefit Funds*, 33 F.4th 424, 431–32 (7th Cir. 2022); *cf. Rieth-Riley I¸* 43 F.4th at 624 (noting how plaintiff brought "contract claims" and not "labor law' claim[s]").

Accordingly, the district court did not err when it held that Plaintiffs' ERISA claims were preempted under the *Garmon* doctrine. We decline to address Plaintiffs' alternative arguments as to why there was no other basis for the district court's dismissal of their claims.

## 2. The District Court Correctly Denied Plaintiffs' Request for Preliminary Injunctive Relief

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015) (quoting *Gonzalez v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)).

We review a district court's denial of a preliminary injunction for abuse of discretion. *Stryker Emp. Co. v. Abbas*, 60 F.4th 372, 380 (6th Cir. 2023). We review "the district court's legal conclusions *de novo* and its factual findings for clear error." *Id.* (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012)).

For the reasons discussed above in Section II.B.1, Plaintiffs have failed to demonstrate a likelihood of success on the merits. The district court correctly found that Plaintiffs' ERISA claims are preempted by the *Garmon* doctrine. Because no other claims remain, Plaintiffs' preliminary injunction request therefore fails at step one, and we need not address the remaining preliminary injunction factors. Accordingly, the district court did not abuse its discretion when it denied Plaintiffs' preliminary injunction requests.

### 3. The District Court Correctly Denied Plaintiff Rieth-Rieley's Request for Leave to File an Amended Complaint

"Generally, leave to amend is 'freely given when justice so requires.'" *Morse v. McWhorter*, 290 F.3d 795, 799–800 (6th Cir. 2002) (quoting *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1348 (6th Cir. 1993)); Fed. R. Civ. P. 15(a). "Denial may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Morse*, 290 F.3d at 800 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

We usually review denials of leave to amend for abuse of discretion. *Graveline v. Benson*, 992 F.3d 524, 546 (6th Cir. 2021). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). However, "a district court's denial of leave to amend on the ground of futility is reviewed *de novo*." *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 671 (6th Cir. 2003).

The district court determined Plaintiff Rieth-Riley's request for leave to file an amended complaint was futile because the claims in the proposed amended complaint were still preempted by the *Garmon* doctrine. And indeed, the claims in Plaintiff Rieth-Riley's proposed amended complaint still necessarily require the same determination of whether the NLRA requires Defendants to accept Plaintiff's contributions to the Fringe Funds while CBA negotiations are ongoing. Thus, Plaintiff Rieth-Riley's amended claims continue to be preempted by the *Garmon* doctrine. The district court did not err when it so concluded and subsequently denied Plaintiff Rieth-Riley leave to file an amended complaint.

### III.     CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment.

―――――――――――――

## CONCURRENCE

―――――――――――――

Hermandorfer, Circuit Judge, concurring.    In *San Diego Building Trades Council v. Garmon*, the Supreme Court held that "[w]hen an activity is arguably subject to § 7 or § 8" of the National Labor Relations Act, courts generally cannot address the activity's lawfulness but instead "must defer to the exclusive competence of the National Labor Relations Board." 359 U.S. 236, 245 (1959).  That doctrine has been dubbed *Garmon* preemption.  And I agree that it applies to Plaintiffs' liability theory as pled.  That theory linked the Defendant Fringe Funds' claimed ERISA violation with the Funds' alleged failure to follow their purported statutory status-quo duty under the NLRA.  But the threshold question whether the Funds have violated a status-quo duty under the NLRA is an open labor-law dispute in *Garmon*'s heartland.  So long as *Garmon* and its progeny continue to bind, such questions must be routed to the Board for first-instance resolution.

That said, aspects of *Garmon* square poorly with jurisdictional first principles.  Congress has mandated that federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  And a "federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (citation omitted).  Contra *Garmon*'s purported preemption rule, "[f]ederal statutes do not 'preempt' other federal statutes." *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004).  The concept of *Garmon* preemption is thus a "misnomer" as applied to federal claims in federal court. *General Motors, LLC v. FCA US, LLC*, 44 F.4th 548, 556 n.4 (6th Cir. 2022).

Nor does preemption, which is a defense, typically "affect subject-matter jurisdiction" of federal courts. *Baker*, 357 F.3d at 688.  Yet our Court and others have read *Garmon* to create a jurisdictional bar on federal courts' adjudication of federal questions. *See, e.g.*, *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 300 (6th Cir. 2011) ("*Garmon* strips courts of jurisdiction.").  And *Garmon*'s no-subject-matter-jurisdiction rule covers even suits, like those

arising under ERISA, over which district courts have exclusive jurisdiction.  *See* 29 U.S.C. § 1132(e)(1).

*Garmon*'s rule, moreover, applies even if an issue only "*arguably*" implicates the Board's labor-law domain.  *Garmon*, 359 U.S. at 245 (emphasis added).  Yet there is typically a "'high bar' on any claim that Congress has deprived the federal courts of subject-matter jurisdiction over a dispute."  *New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 462 (6th Cir. 2024) (quoting *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015)).  In the mine run of cases, "[a]bsent a 'clear statement' from Congress depriving us of jurisdiction over a dispute, we have it."  *Id.* (quoting *Harrow v. Dep't of Def.*, 601 U.S. 480, 484 (2024)).  A jurisdiction-stripping rule that stems from arguable bases—rather than clear directives—misaligns with our usual jurisdictional mode.

Other oddities attend *Garmon*'s curious conception of jurisdiction.  Consider, for one, how subject-matter jurisdiction over the same suit might toggle on and off.  If a party seeks to press a federal claim that implicates the Board's labor-law domain, subject-matter jurisdiction might be lacking.  But should the Board adjudicate any embedded labor-law issue, subject-matter jurisdiction springs into effect; same jurisdiction-conferring statutes, same federal-question suit, different jurisdictional results.  The scope of *Garmon*'s preclusive effect is similarly elusive:  Its no-subject-matter-jurisdiction rule depends not on the NLRA's "statutory text," but on "'penumbra[s]' that wax and wane as the Board develops, or declines to develop, its own carefully insulated common law of labor relations."  *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 787 (2023) (Thomas, J., concurring in the judgment) (quoting *Garmon*, 359 U.S. at 240).  So much for favoring jurisdictional rules that are "both clear and easy to apply."  *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 25 (2017).

To the extent *Garmon* is instead best understood as a subset of primary jurisdiction doctrine, more complications abound.  Primary jurisdiction limits lack force "[i]f no administrative forum is available."  *United States v. Haun*, 124 F.3d 745, 750 (6th Cir. 1997).  So

should *Garmon* likewise be subject to a futility exception?**1**   What if the federal-court matter is time sensitive and the Board lacks a quorum (as it has throughout history)?   *Cf. Glacier*, 598 U.S. at 777 n.1 (*Garmon* inapplicable where plaintiff "lacks a 'reasonable opportunity' to secure a Board decision on the legal status of the conduct at issue" (quoting *Sears, Roebuck & Co. v. S.D. Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 201 (1978))).   Or if a party asserts that the Board is unconstitutional and thus without power to adjudicate any *Garmon*-covered issue?   *Cf. Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191-96 (2023) (such structural constitutional claims may proceed in federal district court); *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) (no *Younger* abstention where state tribunal was constitutionally "incompetent" to "adjudicate the issues pending before it").   Or if the Board's action on a party's pending labor-law petition is "unlawfully withheld or unreasonably delayed"?   5 U.S.C. § 706(1).

Recent administrative-law developments raise further questions about *Garmon*'s going-forward application.   *Garmon* rested in large part on respecting the Board's primacy over resolving labor-law disputes.   Under *Loper Bright Enterprises v. Raimondo*, however, "courts must exercise independent judgment in determining the meaning of statutory provisions."   603 U.S. 369, 394 (2024).   So applying *Garmon* to shunt statutory interpretation questions from courts to the Board might not withstand *Loper Bright* scrutiny.   Nor is it clear that *Garmon* could cover labor-law disputes mirroring "common law" claims that are "legal in nature"—which the Constitution preserves for Article III courts and juries, not agencies' in-house proceedings.   *SEC v. Jarkesy*, 603 U.S. 109, 122 (2024) (citation omitted); *see also Int'l Union of Operating Eng'rs, Stationary Eng'rs, Loc. 39 v. NLRB*, 155 F.4th 1023, 1056-57 (9th Cir. 2025) (Bumatay, J., dissenting in part).

---

**1***Cf., e.g.*, *Carr v. Saul*, 593 U.S. 83, 93 (2021) (Supreme Court "has consistently recognized a futility exception to exhaustion requirements"); *Smith v. SEC*, --- F.4th ----, 2026 WL 850806, at *7 (6th Cir. 2026) ("We view the crucial inquiry as whether the agency can provide the relief requested if the argument succeeds, not whether it is likely to succeed."); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998) (futility exception to ERISA's administrative-exhaustion requirement); *see also John S. Griffith Constr. Co. v. United Bhd. of Carpenters & Joiners of S. Cal.*, 785 F.2d 706, 711 (9th Cir. 1986) (*Garmon* inapplicable where employer could "never get" the relevant labor-law ruling "from the Board").

All that adds up to shaky footing for *Garmon*.  That in turn counsels caution in expanding the doctrine beyond its proper scope.  Recognized exceptions—like where labor-law questions "emerge as collateral issues in suits brought under independent federal remedies," *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 85 (1982) (citation omitted)—help ensure that courts resist applying "the *Garmon* guidelines in a literal, mechanical fashion," *Sears, Roebuck & Co.*, 436 U.S. at 188.  Beyond that, not just any labor-law question embedded in a federal case will trigger *Garmon*.  The labor-law question must be one that the Board has not yet resolved; if the Board has already spoken on the subject, *Garmon*'s Board-first rationale falls away.  Answering the labor-law question, moreover, must be a necessary step in the court's adjudication of the federal claims.  The mere fact that there is an undisputed, predicate labor-law duty on the part of a party should not typically suffice to trigger *Garmon*—as counsel for the Funds acknowledged at oral argument.  Oral Arg. at 23:45-24:36.

Here, Plaintiffs at points gestured towards a different ERISA theory that did not require resolving disputed issues under the NLRA.  But as the Court's opinion explains, Plaintiffs' core ERISA contention, as pled, necessarily required the district court to resolve questions regarding the Funds' NLRA duties.  *Garmon*, as interpreted by this Court's precedent, bars federal-court adjudication of those claims.  *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 610-11 (6th Cir. 2004).  I do not, however, read the Court's opinion to foreclose jurisdiction over distinct ERISA claims that do not turn on the Funds' alleged NLRA obligations.  With those additional observations, I concur.